LLOYD v. PENNIE et al.

(District Court, N. D. California. March 29, 1892.)

1. PRIVILEGED COMMUNICATIONS — HUSBAND AND WIFE — LETTERS IN POSSESSION OF ADMINISTRATOR.

Code Civil Proc. Cal. § 1881, prohibiting the examination of a husband or wife, during or after marriage, as to communications between them during marriage, does not extend its protection to letters from one to the other found in the possession of the wife's administrator after both are dead. People v. Mullings, 23 Pac. Rep. 229, 83 Cal. 138, distinguished.

2. SAME — EXAMINERS IN EQUITY.

Where the evidence is being taken before an examiner, the letters, even if privileged, should be produced before him and made part of the record, under the rule of equity practice which requires that evidence objected to and ruled out shall be incorporated in the record, in order that the court may pass upon the ruling.

3. SAME.

Compliance with the rule is especially necessary where the letters constitute the primary evidence of a fact in issue, since, if presented to the court and rejected, the foundation would then be laid for secondary evidence.

In Equity. Bill by John Lloyd, as assignee of James Linforth, John Bensley, and L. B. Benchley, copartners, against James C. Pennie, as administrator of John Bensley, and James C. Pennie, as administrator of Marian L. J. M. Bensley, deceased. Heard on an order upon defendant, as administrator of Marian L. J. M. Bensley, deceased, to show cause why he should not be required to produce in evidence certain letters written by John Bensley to said Marian, his wife. Order made to produce the letters.

Henry C. Hyde, (W. C. Belcher, of counsel,) for complainant.

Naphtaly, Freidenrich & Ackerman, (Myrick & Deering, of counsel,) for defendants.

MORROW, District Judge. The defendant James C. Pennie, administrator of the estate of John Bensley, deceased, and administrator of the estate of Marian L. J. M. Bensley, deceased, having been subpœned to appear before the examiner as a witness on the part of the complainant, and ordered to produce before such examiner certain letters written by John Bensley to his wife, Marian L. J. M. Bensley, appeared, and, on the advice of his attorneys, declined to produce said letters, on the ground that they are confidential and privileged communications from husband to wife. The order to show cause why the defendant should not be punished for contempt in refusing to produce such letters brings before the court the question as to whether such letters are privileged communications. To understand the position of the parties and the question involved, it is necessary to refer to the allegations of the bill in equity, in support of which these letters are demanded as evidence.

The bill was filed in this court February 25, 1890, by John Lloyd, as assignee of James Linforth, John Bensley, and L. B. Benchley, copartners under the firm name of Linforth, Kellogg & Co., against James C. Pennie, administrator of the estate of John Bensley, deceased, and James C. Pennie, administrator of the estate of Marian L. J. M. Bensley, deceased. It appears from the bill that for several years prior to the 15th day of February, 1877, John Bensley, L. B. Benchley, and James Linforth were engaged in business in San Francisco under the firm name of Linforth, Kellogg & Co.; that on the date last named certain creditors of the firm presented and filed in this court a petition praying that the firm, and the individual members thereof, be adjudged bankrupts; that on the 27th day of February, 1877, the said firm of Linforth, Kellogg & Co., and each of the copartners, were declared and adjudged to be bankrupts, within the meaning and subject to the provisions of the Revised Statutes of the United States; that on the 26th day of March, 1877, James C. Patrick and A. L. Tubbs were appointed assignees; that they took charge of the estate of said bankrupts, so far as then known, and entered upon the performance of their duties; that the said assignees proceeded with the administration and distribution of said estate according to law, and declared and paid dividends to the creditors of the estate amounting to 47½ per centum; that in 1887 Patrick died, and soon after Tubbs resigned, and thereupon John Lloyd, the complainant herein, became assignee of the estate by appointment; that John Bensley, one of the copartners of the firm, died intestate on the 14th day of June, 1889, and James C. Pennie was appointed administrator of his estate; that on the 30th day of December, 1889, Marian L. J. M. Bensley, the widow of John Bensley, also died intestate, and James C. Pennie became the administrator of her estate. The bill alleges—

"That John Bensley and his wife, the said Marian L. J. M. Bensley, both well knowing the financial embarrassment and condition of the said firm, and of the members thereof, as aforesaid, and well knowing and anticipating that the said firm and its members would be forced into insolvency, planned a fraudulent scheme and device, perpetrated and carried out in the manner

hereinafter stated, to prevent the individual property of the said John Bensley from coming into the hands of the assignees of the said bankrupts, and to prevent the same from being distributed under said act of congress, and to defeat the object of, and to impair and hinder and impede and delay the operation and effect of, and to evade the provisions of, said act of congress, and to hinder and delay and defraud and cheat the creditors of said John Bensley and of said Linforth, Kellogg & Co."

For the purpose of carrying out this fraudulent scheme, the bill further alleges, in substance, that, on the 30th day of December, A. D. 1876, and within six months before the filing of the petition against said bankrupts, and with a view of preventing the individual property of the said John Bensley from coming to the hands of the assignees of the said bankrupts, and to prevent the said property from being distributed under said act of congress, and to defeat the object of, and to impair and to hinder and impede and delay the operation and effect of, and to evade the provisions of, the said act of congress, and to hinder, delay, defeat, defraud, and cheat the said creditors, said John Bensley assigned, transferred, and conveyed to one Orrin Curry certain valuable pieces of real property located in the city of San Francisco, and that the conveyance of this property was without consideration, and was accepted and received by the grantee with full knowledge of the fraud, intent, scheme, and device of the Bensleys. It is also alleged that, after the adjudication in bankruptcy of the said John Bensley and of the said firm of Linforth, Kellogg & Co., Bensley and his wife, fraudulently intending to deceive and defraud his creditors and the said assignees in bankruptcy, and to secure a restoration to Bensley of his individual property, which had vested in said assignees by virtue of the bankruptcy proceedings, induced the assignees and creditors to enter into an agreement with him for a release to him by said assignees of all his individual property, and for his discharge from all his debts; that such an agreement was entered into July 11, 1877, by the terms of which Bensley covenanted and agreed to pay any deficiency which might arise on the claims of the creditors after the firm assets of Linforth, Kellogg & Co. and the individual assets of James Linforth and L. B. Benchley had been applied to the payment of such claims; that this agreement was ratified and confirmed by this court, and Bensley discharged from his individual and copartnership debts, and thereafter the assignees reassigned, transferred, and conveyed to Bensley all of his said property and estate which had become vested in the assignees by virtue of the bankruptcy proceedings; that, at the date of the adjudication of bankruptcy, Bensley was seized and possessed of an estate of the value of $500,000; that after said property had been restored to Bensley, instead of managing it, and appropriating the proceeds, or so much thereof as might be necessary to the payment of the balance due the creditors of Linforth, Kellogg & Co., in accordance with his agreement with the assignee and creditors, he proceeded to carry out the fraudulent scheme devised by himself and wife, and conveyed all his property to his wife and others, without consideration, leaving no assets standing in his name at the time of his

death, June 14, 1889; and that Marian L. J. M. Bensley was privy and party to this fraudulent scheme. It is also alleged that from the time Bensley was adjudicated a bankrupt, February 27, 1877, until the day of his death, June 14, 1889, he was a non-resident of, and absent from, the state of California; that during that period he secreted himself from his creditors, and intentionally avoided coming within the state of California, well knowing that, if his residence were known, his creditors and his assignees would commence proceedings against him; that there is a deficiency due the creditors of the bankrupts of 52½ per centum of their demands, amounting, with interest, to $275,000. The bill asks that a decree may be entered declaring the agreement and contract of the creditors, the order of this court ratifying said contract, and authorizing the assignees to transfer the said property to Bensley, and the conveyance and assignment of the assignees in pursuance of said order, to be void and of no effect, and declaring the present assignee to be the real owner of the said property, and entitled to the same; that the defendant be ordered and directed to make, execute, and deliver to the said assignee a good and sufficient conveyance of the lands and premises described in the bill, and deliver over to the said assignee the said property, or the proceeds thereof heretofore collected and received. It is claimed that, during the period covered by the alleged fraudulent transactions mentioned in the bill, Marian L. J. M. Bensley resided in California, and was acting as the agent of her husband, John Bensley, and that the letters written to her by her husband, and now demanded as evidence, establish the agency and prove the fraudulent transactions.

Section 858 of the Revised Statutes provides:

"In the courts of the United States no witness shall be excluded in any action on account of color, or, in any civil action, because he is a party to or interested in the issue tried: provided, that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects the law of the state in which the court is held shall be rules of decision as to competency of witnesses in the courts of the United States in trials at common law and in equity and admiralty."

The defendant James C. Pennie, as administrator of the estate of Marian L. J. M. Bensley, is a competent witness in this case under this statute; but, under the last clause of the section just quoted, we must look to the law of this state to ascertain whether his competency as a witness is limited with respect to the matter under consideration.

Section 1881 of the Code of Civil Procedure of this state provides:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases: (1) A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any com-

munication made by one to the other during the marriage; but this exception
does not apply to a civil action or proceeding by one against the other, nor to
a criminal action or proceeding for a crime committed by one against the
other.   *   *   *"   ,

It is clear that the language of this provision of the Code does not
limit the competency of the defendant as a witness. The limitation is
upon the husband and wife. Neither can testify for or against the other
without the consent of the other, nor can either, without the consent of
the other, be examined as to any communication made one to the other
during marriage. Moreover, section 1879 of the Code of Civil Proced-
ure provides that "all persons, without exception, otherwise than speci-
fied in the next two sections, who, having organs of sense, can perceive,
and, perceiving, can make known their perceptions to others, may be
witnesses." The provision concerning husband and wife just cited is
contained in one of these sections designated as containing the only ex-
ceptions to the general rule providing that all persons may be witnesses.
But there is no exception in either section under which the defendant
may be excluded or his testimony rejected. He is not privileged from tes-
tifying because of anything contained in section 1881 of the Code of
Civil Procedure, because he does not come within the description therein
contained of the persons who cannot be examined as witnesses.

It is, however, contended that the exception relating to communica-
tions between husband and wife extends to the communications them-
selves, and makes them privileged in the hands of the defendant, as ad-
ministrator of the estate of the wife, to whom the letters were addressed.
The case of *People* v. *Mullings*, 83 Cal. 138, 23 Pac. Rep. 229, is cited as
declaring the law to that effect. In that case the defendant was charged
with murder. He went upon the witness stand in his own behalf.
Upon cross-examination, he was asked questions about conversations be-
tween himself and his wife, to which his counsel objected, on the ground
that they were not proper questions in cross-examination, and on the
additional ground that they called for privileged communications, about
which he could not be examined. The court, in commenting upon the
privilege claimed for the defendant, said:

"The provisions of our Codes on the subject of privileged communications
between husband and wife are little more than a declaration of the com-
mon-law rule upon the subject, except in this respect: The privilege at com-
mon law did not extend to communications which were not in their nature
confidential; and, although such communications were generally held to be
confidential, yet some very difficult questions did occasionally arise as to the
character of the communications; but our Code sweeps away that embarrass-
ing distinction by extending the privilege to any communication made by one
to the other during the marriage."

The court then reviewed the decisions in a number of cases relating to
privileged communications, and said:

"All along the line of the cases about communications between client and
attorney it was steadily argued on the one side that the statute only prevented
the attorney from testifying, and that when the client was on the witness

stand he could be forced to disclose; and the constant answer of the other side, sustained by the courts, was, 'The privilege applies to the communication,' and it cannot be forced from either party to the confidential relation. It is clear to us, therefore, that a defendant in a criminal case, who has offered himself as a witness in his own behalf, and who has not testified in chief to any communications between his wife and himself, cannot, without his consent, be examined by the state as to any such communications."

It needs no argument to show that this case does not support the claim of the defendant that the letters are privileged in his hands. The statement of the court that the privilege applies to the communication was not necessary to the determination of the case. The point decided was that the questions concerning conversations between the defendant and his wife were not proper cross-examination.

In *Bowman* v. *Patrick*, in the circuit court of the United States for the eastern district of Missouri, (32 Fed. Rep. 368,) a motion was made to strike out certain exhibits, filed in the master's report of the testimony in the case. These exhibits were letters written by one of the defendants to his wife, and the ground of the motion to suppress them was that they were "such communications as were protected by the principle which the law throws around communications between husband and wife." The wife had died pending proceedings for a divorce, and the man who professed to be the executor or administrator of her estate got hold of these letters, and, without any requirement of his office, but in a spirit of hostility to the husband, delivered them to the other side. He was not a party to the action, but was acting as a volunteer in the production of the letters. Mr. Justice MILLER, in passing upon the motion, said:

"What might be the rule of law if this administrator had filed these letters in due course of administration for any useful purpose in a public office, and they had been obtained and copied by a third party, or if they had got into the hands of the party who now seeks to use them in any appropriate and innocent manner, I am not prepared to say; but I do rule that, under the circumstances in which these letters got into other hands, they ought not to be used as evidence."

The learned judge expressly places his decision upon the circumstances of that case, which, differing materially from the case at bar, cannot be considered as authority in determining the question involved in this controversy.

In *Stein* v. *Bowman*, 13 Pet. 220, the plaintiff having read in evidence the deposition of a deceased witness, the defendant called the wife of the deceased to prove that her husband has been bribed to give evidence in that case, and also to prove that he had frequently told her he knew nothing of the plaintiff or of another party. To this testimony an objection was interposed, and the court held that the wife could not "either voluntarily be permitted, or by force of authority be compelled, to state facts in evidence which render infamous the character of her husband."

In *Lucas* v. *Brooks*, 18 Wall. 436, the defendant offered the deposition of his wife to prove a part of his case. The court below excluded the deposition, and the supreme court held that, under the statute of West

Virginia, where the case arose, the wife could not be examined for or against her husband.

The law as stated in these last two cases, as, indeed, in all the cases cited by counsel for defendant, is not disputed. They simply state the law as declared by the Code of Civil Procedure of this state, and as construed by the supreme court in *People* v. *Mullings, supra,* to the effect that communications between husband and wife "cannot be forced from either party to the confidential relation." They do not sustain the position that the policy of the law, as declared by the courts, places the seal of secrecy absolutely and forever upon the communications between husband and wife. The law, in fact, appears to be otherwise. Such communications are received in evidence when produced by parties who do not occupy the confidential relation. In *State* v. *Buffington,* 20 Kan. 599, the defendant was being prosecuted criminally. On the trial the prosecution introduced in evidence a letter from the defendant to his wife. The defendant claimed that this letter was a confidential communication from himself to his wife, and therefore that it was not competent evidence against him. The letter was in the hands and custody of the prosecuting witness at the time it was introduced. It had been previously sent through the post-office and by mail from the defendant to his wife. The prosecuting witness received it from the post-office, properly directed to the defendant's wife. He delivered it to her, and she, after reading it, returned it to him, and he furnished it to the prosecution, to be read in evidence. It did not appear that either the defendant or his wife had at that time any control over the letter. The court, in passing upon the admissibility of the letter observed:

"It is certainly true that a communication between husband and wife is a privileged communication. But it is privileged only while it remains within their custody and control, or while it remains within the custody and control of their agents or representatives, and just so far as it remains within the custody and control of themselves or their agents or representatives."

A number of cases are cited by the court in support of this rule, and the statute of the state of Kansas is quoted, as follows:

"In no case shall either [the husband or wife] be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation existed or afterwards." Civil Code, § 323.

The court, referring to this statute, in connection with another, relating to witnesses in criminal cases, says:

"It will be seen that these statutes do not go to the extent of excluding said letter as evidence. While the Civil Code provides that neither the husband nor wife shall, as a witness, furnish evidence concerning confidential communications, yet it does not provide that others who may happen to be possessed of such communications shall not do so."

In *State* v. *Hoyt,* 47 Conn. 518, the defendant was on trial for murder. The state offered in evidence sundry letters written by the defendant to his wife, which the state claimed contained admissions inconsistent with

the claim of the defendant as to his unconsciousness at the time of the homicide and as to his unsoundness of mind. To the introduction of the letters the defendant objected, on the ground that the letters were confidential communications between husband and wife, and as such could not be used in evidence against the husband. It was not shown how the state obtained the letters, but the court overruled the objection and admitted the letters. The supreme court, in passing upon this ruling of the lower court, said:

"In this ruling the court violated no rule of evidence. The question was not whether the husband or wife could have been compelled to produce this evidence, but whether, when the letters fell into the hands of a third person, the sacred shield of privilege went with them. We think not. 1 Greenl. Ev. § 254a. The fact that the communications in this case were written places them on no higher ground than if they were merely oral. And, as to the latter, it is well settled that conversations between husband and wife are not privileged so as to prevent a third person, who overheard them, from testifying."

It will not be necessary to discuss all the cases cited as bearing on this question. For the present, it is enough to say that I do not think they establish the rule that communications between husband and wife are privileged in the hands of third persons; certainly not under a statute declaring the privilege in the language of the Code of this state. Moreover, the tendency of the privilege is to prevent the full disclosure of the truth, and it is therefore to be strictly construed. *Satterlee* v. *Bliss*, 36 Cal. 508; *Foster* v. *Hall*, 12 Pick. 89; *Gower* v. *Emery*, 18 Me. 82; *Nias* v. *Railway Co.*, 2 Keen, 76.

It is to be observed, further, that these letters should be produced by the defendant whether admitted in evidence or not. This is a bill of equity, seeking to set aside certain conveyances in fraud of creditors. It is part of complainant's case here that Mrs. Bensley was acting as the agent of her husband in the execution of this fraudulent scheme, and that these letters establish the fact of the agency, and disclose the character of the transactions. They appear to be primary evidence of the facts alleged, and ought, therefore, to be produced to the court for inspection. If then rejected, on account of their privileged character, the foundation will have been laid for secondary evidence. But, further than this, as a rule of practice, the defendant should produce the letters to the examiner, that they may be made a part of the record. In *Blease* v. *Garlington*, 92 U. S. 8, the supreme court declared the rule with respect to the necessity of incorporating into the record testimony in equity cases objected to and ruled out. The court said:

"If testimony is objected to and ruled out, it must be sent here with the record, subject to the objection, or the ruling will not be considered by us. A case will not be sent back to have the rejected testimony taken, even though we might, on examination, be of the opinion that the objection to it ought not to have been sustained. Ample provision having been made by the rules for taking the testimony and saving exceptions, parties, if they prefer to adopt some other mode of presenting their case, must be careful to see that it conforms in other respects to the established practice of the court."

As the present case may be reviewed on appeal, it is the duty of the court, in accordance with the practice in equity, as stated by the supreme court, to direct that the defendant produce the letters, as demanded. The order will be made, however, without prejudice to the right of the defendant to renew the claim of privilege hereafter, by a motion to suppress the letters, at the proper stage of the proceedings.