HON. JOHN B. CLAYBERG,

HON. LEW. L. CALLAWAY,

HON. W. H. POORMAN.

---

STATE, RESPONDENT, v. ROGERS, APPELLANT.

(No. 2,039.)

(Submitted May 25, 1904. Decided June 22, 1904.)

| 31 | 1 |
| e34 | 256 |

| 31 | 1 |
| e39 | 178 |

| 31 | 1 |
| d40 | 135 |
| 40 | 251 |
| e40 | 252 |

*Burglary — Information—Description of Premises—Witnesses*
*Cross-Examination—Degrading and Discrediting Witness.*

1. The court cannot take judicial notice of the system employed by cities in numbering houses, nor of the relative location of buildings, nor whether there are buildings on certain lots and blocks.
2. Where an information for burglary charges the willful entry of a certain house in the rear of No. 111 East Broadway street, owned by J. K., and it

appears the house burglarized was No. 111 and occupied by M. K., but was situated on the rear of the lot, and there was no other house thereon, accused was not prejudiced by the description or the evidence of ownership.

3.   Under Penal Code, Section 1842, providing that no information is insufficient, nor can the judgment be affected for any imperfection in matter of form, which does not prejudice defendant's substantial rights on the merits, a conviction for burglary will not be disturbed because it appears it was committed on a day prior to that alleged in the informaiton, where defendant was not prejudiced.

4.   Where certain witnesses for defendants in a prosecution for burglary testified that defendants resided with their mother at Centerville, it was not erroneous to allow them to be cross-examined as to whether or not defendants had been arrested in a house in Butte, or did not maintain a room there, as showing that they resided there instead of with their mother.

5.   Where a witness for the prosecution made statements as to what he had heard, and an objection to a further question was sustained because the witness was not testifying from his own knowledge, the ruling practically withdrew the answer to the previous question, and defendant, if he desired a more specific withdrawal, ought to have moved to strike the evidence from the record.

6.   Where, in a prosecution for burglary, a witness who was jointly indicted with defendant testified to having taken a fishing trip with defendant about the time of the burglary, questions on cross-examination to show that the trip was for the purpose of committing robbery were improper, as tending to degrade and discredit the witness and defendant, though the witness answered in the negative.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

JOE ROGERS was convicted of burglary, and he appeals. Reversed.

*Mr. William Meyer,* and *Mr. Alexander Mackel,* for Appellant.

*Mr. James Donovan, Attorney General,* for the State.

MR. COMMISSIONER POORMAN prepared the following opinion for the court:

According to the transcript, Joe Rogers and Pat Rogers were jointly informed against for burglary. The transcript does not contain any record of any trial or conviction of Pat Rogers. Joe Rogers, however, was tried and convicted, and subsequently made a motion for a new trial, which was overruled. Pat Rogers now appeals from the order of the court overruling this

motion for a new trial, and Joe Rogers appeals only from the judgment of conviction made and entered against him. There being no record of any trial or conviction of Pat Rogers, his appeal will be disregarded, and the statement on motion for a new trial made by Joe Rogers will be treated, so far as applicable, as a bill of exceptions in aid of his appeal from the judgment.

1.　It is alleged in the information that the defendants did, on June 25, 1903, "willfully," etc., "enter that certain house situate in the rear of No. 111 East Broadway street * * * owned by one John Kovacevich, * * * with intent * * * the goods, chattels * * * of said John Kovacevich * * * to steal," etc. The evidence is to the effect that the house burglarized was No. 111 East Broadway, and at the time of the burglary was occupied by Michael Kovacevich, who owned property therein, but that the property actually stolen belonged to one Willoczjakske, and was in charge of Michael Kovacevich. On motion of the county attorney the court ordered the information amended by "changing the name from John to Michael Kovacevich." It also appears that this house was situated on the rear of the lot, and that there was no other house thereon. The defendant insists that there is a variance between the proof and the allegations of the information. The entry of a building with the intent to commit a larceny or some felony is all that by the statute is made essential to the crime of burglary. (Section 820, Penal Code.) The gravamen of the charge is the entry with this criminal intent. The particular ownership of the goods in the building, and the ownership and the location of the building entered, are only matters of description. This court cannot take judicial notice of the system employed by cities in numbering houses, nor of the relative location of buildings, nor whether there are buildings on certain lots and blocks. The description appears to have been inserted in the information on the theory that the number "111" applied to the front of the lot, and, the building being on the rear of the lot, it was proper to designate it as being in the rear of that number. There

is no evidence that there were other buildings in that immediate vicinity.

"An indictment is sufficient if it can be understood therefrom that the offense was committed at some place within the jurisdiction of the court," etc. (Subdivision 4, Section 1841, Penal Code.)

In another part of the information it is alleged that the crime was committed at Silver Bow county, Montana. The defendant could not have been prejudiced by this description, or this evidence of ownership. The facts disclosed by this record indicate with sufficient exactness the location of the building entered.

2. It appeared from the evidence that the burglary was committed on June 17th, instead of June 25th, as alleged in the information. Section 1837, Penal Code, reads: "The precise time at which an offense was committed need not be stated in the indictment or information, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense." Unless time is a material ingredient in the offense or in charging the same (Section 1581, Penal Code), it is only necessary to prove that it was committed prior to the finding or filing of the information or indictment. Similar statutes have been construed in this manner in the following cases: *People* v. *Sheldon,* 68 Cal. 434, 9 Pac. 457; *State* v. *Thompson,* 10 Mont. 549, 27 Pac. 349; *People* v. *La Fuente,* 6 Cal. 202; *People* v. *Littlefield,* 5 Cal. 355; *State* v. *Harp,* 31 Kan. 498, 3 Pac. 432; *State* v. *Williams,* 13 Wash. 338, 43 Pac. 15; *Rema* v. *State,* 52 Neb. 375, 72 N. W. 474; *United States* v. *Conrad* (C. C.), 59 Fed. 458.

Where it is alleged in an information that a crime was committed on a certain day, and the prosecution then proves another day, the defense of the defendant, if an alibi, might thereby be practically destroyed; the defendant might not be prepared to prove an alibi as to any day except that named in the information. But the defendant in such a case may protect himself by asking for permission to subpœna other witnesses, or, if neces-

sary, to ask for a continuance, and the action of the court thereon would then become a proper subject for review on appeal. (*Smith* v. *Shook,* 30 Mont. 30, 75 Pac. 513.) It does not appear from the record that the defendant made any such request in this case. Section 1842 of the Penal Code provides that no indictment or information is insufficient, nor can the trial, judgment, or other proceeding thereon be affected, by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits. From the facts as they appear in this record, the defendant was not prejudiced.

3. During the trial counsel for the state asked several of the defendant's witnesses as to whether or not the Rogers boys had been arrested in a room in the Hoffman House, or did not maintain a room in that house. These witnesses had not testified as to the arrest of the defendants, but had testified that neither of the defendants was in Butte between the 14th and 26th days of June; that they lived with their mother at Centerville. The object of the cross-examination was undoubtedly to show, if possible, that the defendants resided at the Hoffman House, in Butte, instead of with their mother at Centerville, and might therefore have been within the city without their mother or the other witnesses knowing it. Pat Rogers, in testifying as a witness on behalf of his brother, Joe Rogers, stated on his direct examination that he and his brother, Joe, were arrested in a room in the Hoffman House, and explained the purpose of their being there, and defendant admitted that he was arrested there. There was no error in permitting this cross-examination.

4. The sheriff of Silver Bow county, when called as a witness on the part of the state, testified that he was acquainted with the defendant Joe Rogers, "and that he has been in my charge as sheriff of Silver Bow county since last July." When asked as to whether or not the defendant had attempted to escape from custody, the witness said: "Well, I know that he escaped, Mr.

Breen. That is what I heard; I was not there at the time it happened. Q. Do you know that it occurred?" Both these questions were objected to by counsel for defendant, and the objection sustained as to the last question on the ground that the witness was not testifying from his own knowledge. This ruling of the court practically withdrew from the consideration of the jury the answer to the previous question. Had the defendant desired a more specific withdrawal, he should have made a motion to strike the evidence from the record, which he did not do. There is no error in the rulings of the court with reference to these questions.

5. Defendant's witness Pat Rogers testified as to a fishing trip of himself and brother from Butte, via Anaconda, to Storm lake; that they left Butte June 14th, and did not return until June 26th. On cross-examination by the state's counsel it developed that both of the defendants named in the information went by stage from Anaconda to Cable, thence to Storm lake; that the only purpose of going to Cable was to see the town, as the witness had not been there before, and had heard much of the place. It was in evidence that the parties had taken with them two pistols and one shotgun, in addition to fishing tackle, bedding and provisions. The witness was then asked: "Is it not a fact that when you went to Cable—when you took that trip—that your object was to find out when the bullion was to be shipped from Cable?" The witness testified that he had ordered a Lee straight-pull gun from Chicago for hunting purposes, but did not have it with him. This further question was then asked: "Now, Mr. Rogers, didn't you get that Lee straight-pull rifle for the purpose of holding up the bullion that was going from the Cable mine?" Both of these questions were objected to as incompetent, irrelevant and immaterial, and as having nothing to do with the case. The objections were overruled, and the witness answered in the negative. It is claimed that the court erred in overruling these objections; that the questions have a direct tendency to degrade the witness and his

brother, the defendant, in the eyes of the jury. The witness of whom these questions were asked was a brother of the defendant, and was jointly informed against with the defendant, and, according to the testimony, the two brothers had taken this trip for a common purpose. If it could therefore be made to appear to the jury that Pat Rogers had gone to Cable for the purpose of committing a robbery, such evidence would reflect equally upon the defendant, Joe Rogers.

It is a rule well established in this state that when an accused becomes a witness in his own behalf, and denies that he committed the crime for which he is on trial, a wide latitude of cross-examination is permissible, owing to the general nature of the defendant's statements. Upon the cross-examination of such witness such deflections from the matter brought out on direct examination are allowed as may be necessary to bring the whole matter involved in the direct examination before the court, and to extract the whole of the truth concerning the matter brought forward by the accused. (*State* v. *Howard,* 30 Mont. 518, 77 Pac. 50; *State* v. *Duncan,* 7 Wash. 336, 35 Pac. 117, 38 Am. St. Rep. 888; *People* v. *Mullings,* 83 Cal. 138, 23 Pac. 229, 17 Am. St. Rep. 223; *People* v. *Morton,* 139 Cal. 719, 73 Pac. 609.)

A witness, whether the accused or any other witness, may be discredited in any of the various ways named in the statute or sanctioned by law, but it is not permissible to ask any witness any question merely for the purpose of degrading him. It is the right of a witness to be protected from irrelevant, improper and insulting questions (Section 3402, Code of Civil Procedure), and he need not give an answer which will have a tendency to subject him to punishment for a felony or to degrade his character, unless it be to the very fact in issue, or to a fact from which the facts in issue would be presumed. (Section 3401, *Id.*) These questions were totally foreign to the matter before the court, and could have no bearing whatsoever on the guilt or innocence of the defendant of the crime with which he

was accused by the information. They could therefore subserve no purpose whatsoever except to degrade and discredit the witness and his brother, the defendant, in the eyes of the jury.

It is not presumed that state's counsel, being charged with the protection of the rights of all citizens, would accuse a witness of having committed a crime unless he had some evidence of the truth of the accusation. The questions, therefore, would convey the impression to the jury that the state's counsel had reason to believe that the defendant went to Cable for the purpose of committing a robbery. The fact that it was not intended to prejudice the defendant, or that the questions only accused the defendant of the intent to commit a crime, or that the negative answers of the witness were conclusive upon the state, could not free the questions of their objectionable character. It was certainly not to be expected that they would be answered in the affirmative.

In *People* v. *Mullings,* 83 Cal. 138, 23 Pac. 229, 17 Am. St. Rep. 223, the court said: "It is quite evident that the *questions,* and *not the answers,* were what the prosecution thought important. The purpose of the questions, clearly, was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based."

In *State* v. *Gleim,* 17 Mont. 17, 41 Pac. 998, 31 L. R. A. 294, 52 Am. St. Rep. 655, this court laid down the rule that such questions are improper and prejudicial. The reasons therefor are discussed in the opinion of the court in that case, and are also elaborately discussed in *People* v. *Wells,* 100 Cal. 459, 34 Pac. 1078, and it is unnecessary to repeat the discussion here. We cannot recommend that the rule in the *Gleim Case* should be reversed. The same questions are also discussed in *People* v. *Un Dong,* 106 Cal. 83, 39 Pac. 12; *Estate of James,* 124 Cal. 653, 57 Pac. 578, 1008; *People* v. *Crandall,* 125 Cal. 129, 57 Pac. 785; *Gale* v. *People,* 26 Mich. 161; *People* v.

*Cahoon,* 88 Mich. 456, 50 N. W. 384; *Leahy* v. *State,* 31 Neb. 566, 48 N. W. 390; *State* v. *Trott,* 36 Mo. App. 29.

*Matusevitz* v. *Hughes,* 26 Mont. 214, 68 Pac. 468, cited by respondent, is not in point on this proposition. There the witness had voluntarily, in part of his testimony, stated that he had been arrested. On cross-examination he was asked, "What were you charged with at that time? What were you arrested for?" This question the court held was not prejudicial.

We think this judgment should be reversed, and the case remanded for a new trial.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment is reversed, and the case remanded for a new trial.