[Civ. No. 20284. First Dist., Div. Two. June 14, 1963.]

SCOTT FORTNER, a Minor, etc., et al., Plaintiffs and Appellants, v. NICKELS FRED BRUHN, Defendant and Respondent.

Buresh, Smith, Truett & Durham, Lawrence E. Wright and John G. Buresh for Plaintiffs and Appellants.

Spridgen, Moskowitz, Barrett & Achor and R. Winfield Achor for Defendant and Respondent.

KAUFMAN, P. J.—This is an action brought by Scott Fortner, a minor, and his father and guardian *ad litem*, Troy Fortner, for damages for personal injuries sustained by the minor in a collision between the motorcycle on which he was riding with his uncle, and a truck owned and operated by the respondent, N. F. Bruhn. The case was tried before a jury which returned a verdict in favor of the respondent. The only contentions on this appeal relate to prejudicial error in cross-examination and certain instructions to the jury.

As the sufficiency of the evidence is not in issue, a brief summary of the facts will suffice. The accident occurred about 7:30 p.m. on June 1, 1959, at a curve in the Marshall-Petaluma Road in Marin County. The 9-year-old minor, without the express permission of his parents, was riding on the jump seat of a motorcycle operated by his 25-year-old uncle, Danny Wyatt. As the result of the accident, the minor sustained serious physical injuries, as well as brain damage resulting in permanent mental retardation so that he was unable to testify at the trial. The appellants' chief witness was the driver of the motorcycle, Danny Wyatt.

On direct examination, Troy Fortner testified that Danny, who was his wife's brother, frequently acted as a baby sitter and took care of Scott. During the three years that the Fortners had lived in Florence, Oregon, Danny lived near them and also had lived with them for a year in Pacheco, California, when Scott was six or seven years old. Mr. Fortner testified that he considered Danny a good, wholesome, adult companion for his son and stated that Danny was careful and considerate of the young boy. Scott and Danny had great affection for each other and Scott was like a shadow to his uncle.

 The chief contentions on appeal relate to the following which occurred on the cross-examination of Troy Fortner. Respondent's counsel asked: "Q. You knew, of course, on June 1, 1959, that Danny Wyatt had been convicted of carrying a concealed weapon in the State of Washington? A. No, I did not. Q. You knew, also, he was convicted of larceny in Florence, Oregon?" The record indicates that following this question, appellants' counsel asked that a point of law be discussed in chambers. Although the proceedings in chambers were not reported, both sides agreed that the court overruled the objection and found the questions proper. When the trial was resumed, the following ensued: "The Court: The record will show that all the jurors are present and in their places,

I take it, then, Mr. Buresh, there is no objection to the pending question. Mr. Buresh: Yes, there is, as to the form of it. As I understand the question, no time is indicated when Mr. Fortner may have known of anything like this. The Court: I will sustain the objection if you say June 1. Mr. Buresh: I think the question is ambiguous. The Court: I will sustain the objection as to the form and suggest that it be rephrased.''

The cross-examination then proceeded as follows: ''Mr. Achor: Q. Now, on June 1, 1959, Mr. Fortner, that was the date of this accident? A. That is correct. Q. Now, as of June 1, 1959, you knew that Danny Wyatt had been convicted of carrying a concealed weapon in the State of Washington, did you not? A. I did not. Q. You also knew on June 1, 1959, that Danny Wyatt had been convicted of larceny in Florence, Oregon? A. I did not. Q. At any time prior to June 1, 1959, did you know that? A. I did not. Q. Did you know it at any time prior to your testifying yesterday? A. Yes. Q. And you knew of both instances, is that correct, prior to testifying yesterday? A. I can answer that, but then I would have to explain. Q. Well, you can answer it 'Yes' or 'No', sir. The Court: He is entitled to explain. Mr. Achor: Q. Did you know before you testified yesterday that Danny Wyatt had been convicted of either of these? A. Yes, I knew of the incidents, but I did not know what he had been convicted of. Q. Is that also true for your knowledge on June 1st, 1959? A. No, it is not.''

Danny Wyatt was not questioned about these matters. No records or proof of conviction were ever introduced. As a result of the above questions and answers, the court instructed the jury that a witness could be impeached by proof that he had been convicted of a felony.[1]

Appellants' major contention on appeal is that it was prejudicial error to permit the cross-examiner to ask Troy Fortner the questions concerning his knowledge of Danny Wyatt's con-

[1]The instruction given, based on BAJI No. 26 (rev.) reads as follows: ''In judging the credibility of witnesses, including any party who has testified, you shall have in mind the law that a witness is presumed to speak the truth. A witness, however, may be impeached and this presumption overcome by contradictory evidence; by the manner of the witness on the stand; the credibility of intelligence exhibited by him; the character of his testimony; by evidence showing his motive or interest in the outcome of the case or his bias or prejudice for or against one of the parties; by evidence that on some former occasion he made a statement or statements inconsistent with his present testimony; by evidence adversely affecting the character of the witness for truth, honesty or integrity; *or by proof that he has been convicted of a felony.*'' (Italics supplied.)

victions without proof thereof, and to give the above instruction to the jury concerning impeachment.

We agree. It is hornbook law that counsel may not make assertions of fact concerning matters not otherwise put into evidence by putting improper questions to witnesses (6 Wigmore, Evidence (3d ed. 1940) § 1808, pp. 274-279). Section 2051 of the Code of Civil Procedure provides: ''A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full and unconditional pardon, based upon a certificate of rehabilitation.''

Nowhere in the record before this court does the truth of these assumed convictions appear. The only mention of them is in the questions asked by respondent's counsel and there they are stated as matters of fact. However, neither proof nor offer of proof of such facts was made by counsel. From all that appears here, the statements well might have been entirely a fiction of counsel's imagination. The complete failure to prove such criminal convictions strongly indicates a lack of good faith[2] in asking the questions. ▮ While a wide latitude should be given in cross-examinations, counsel, in putting questions to the witness, should not be allowed to assume facts not in evidence and state as positive assertions facts which if true, would be detrimental to the opposing party's case and of such a nature as to inflame and prejudice the minds of the jurors. This is especially true where, as in the present case, there is no proof of the facts asserted and the question is asked concerning a key factor in the credibility of the appellants' chief witness, Danny Wyatt. We noted earlier that the questions were not asked of Wyatt (*People* v. *Perez*, 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617]; *People* v. *Fleming*, 166 Cal. 357 [136 P. 291, Ann. Cas. 1915B 881]; *People* v. *Wells*, 100 Cal. 459 [34 P. 1078]; *People* v. *Mullings*, 83 Cal. 138 [23 P. 229, 17 Am.St.Rep. 223]; *Estate of Martin*, 170 Cal. 657 [151 P. 138]). While the factual situations in the cases cited are not similar to that presented herein, never-

---

[2]Respondent argues that the questions were in good faith based on the deposition of Danny Wyatt. The deposition, although used to refresh the memory of Wyatt as to other matters, was not introduced into evidence at the trial and is not a part of the record before us.

theless the reasoning expressed in those opinions is directly applicable to the instant situation. The inherent vice of the matter lies in the attempt to bring before the jury, in a round-about way, facts which could not be proved and which from all appearances may have been entirely false.

Inasmuch as upon the issues of negligence and contributory negligence, the case here was close and the appellants' case completely dependent on the testimony of Danny Wyatt, we cannot say that the questions were not prejudicial. *McDonald* v. *Price*, 80 Cal.App.2d 150 [181 P.2d 115], an action by the wife for damages for the wrongful death of her husband, is directly in point. The wife was asked if she knew that the husband had pleaded guilty to a certain felony and three misdemeanor charges, no evidence of which was produced or offered to be produced. In reversing the judgment, the appellate court pointed out that not only did the examiner state positively in his questions facts which he made no effort to support but that the evidence which was attemped to be elicited was immaterial. (Cf. *Mangino* v. *Bonslett*, 109 Cal. App. 205 [292 P. 1006], where a new trial was granted in an action for personal injuries because of the repeated statements of defense counsel that the real plaintiff was an insurance company.)

As stated in *People* v. *Mullings*, *supra*, at page 146, to assume that the asking of improper questions which included statements of damaging facts which could not be proven does not prejudice the opposite party in the minds of lay jurors "is to ignore human experience and the dictates of common sense." It seems apparent that it was the questions and not the answers which defendant's counsel thought important. The purpose of the questions clearly was to keep before the jury the assumption of facts which could not be proven, and thus impress upon them the probability of the existence of the assumed facts upon which the questions were based.

Respondent, however, contends that appellants' counsel "opened the gates" by establishing on direct that Troy Fortner considered Danny Wyatt as a wholesome companion for his son. A similar contention was answered in *Dastagir* v. *Dastagir*, 109 Cal.App.2d 809 [241 P.2d 656]. In reversing the judgment, the court said at page 815: " 'The argument that defendant's counsel "opened the gates" is unavailing. An error that is prejudicial is no less so because it results from a lack of knowledge on the part of either counsel or both,

Legitimate cross-examination does not extend to matters improperly admitted on direct examination. Failure to object to improper questions on direct examination may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony. The so-called ''open the gates'' argument is a popular fallacy. ''Questions designed to elicit testimony which is irrelevant to any issue in the case on trial should be excluded by the judge, even though opposing counsel has been allowed, without objection, to introduce evidence upon the subject.'' (27 Cal.Jur. p. 74). ''It is a settled rule that cross-examination as to matters irrelevant to the issue may and should be excluded—even though, in some cases, testimony relative thereto was elicited upon direct examination—and that a party may not, under the guise of cross-examination, introduce evidence that is not competent within the meaning of the established rules.'' (27 Cal.Jur., p. 106.)' (See, also, 1 Wigmore on Evidence (3d ed. 1940) § 15.)''

As to respondent's contention that the appellants' objection was not sufficient, we note that despite the absence of a report of the proceedings in chambers, both sides agree that the prior convictions were discussed and the objections overruled.

■ The trial judge is not a mere umpire. On the contrary, he is under a duty to see that a fair trial is accorded the parties on the merits which means excluding on his own motion matters that tend only to prejudice the jurors and take them away from a consideration of the case upon its merits and its merits alone. Not only is the power and the duty of the court sustained by the decisions, but in this state, it is supported and commanded by statute. Section 2044 of the Code of Civil Procedure provides, in part: ''The court must exercise a reasonable control over the mode of interrogation, so as to make it as rapid, as distinct, as little annoying to the witness, and as effective for the extraction of the truth, as may be; but subject to this rule, the parties may put such pertinent and legal questions as they see fit.''

■ We think the court properly ruled that the questions were relevant but erred in permitting them without a proper offer of proof as required by law. Such proof is essential, as only a conviction of a felony may serve to impeach a witness. The offenses mentioned here could have been either misdemeanors or felonies, and it was the duty of the court to ascertain this fact before permitting the questions.

Unless the court promptly strikes out an improper question and rebukes counsel for asking it, the damage is done. If

opposing counsel objects and his objection is sustained, the jury may well speculate on what the answer would have been. If no objection is made, the witness's denial still leaves the damaging implication or inference of the question in the record. In such circumstances, for opposing counsel to object is generally more damaging than to permit the question to be answered without an objection. The court is no longer confined, if such ever was the rule, to the role of sitting as a mere arbitrator between opposing counsel. ██ It is the function of the court to see that errors or extraneous matters are not brought into the case, which might have the effect of clouding the issue or confusing the jury. ██ Where improper questions are asked, the court is acting within the proper scope of its duty in striking out the offending question whether or not objections had been previously made thereto.

In *Dastagir* v. *Dastagir, supra,* the judgment was reversed for precisely these reasons, despite the absence of an objection. ██ We think that the questions, as well as the clearly erroneous jury instruction based thereon (*People* v. *Cotton,* 117 Cal.App. 469 [4 P.2d 247]; BAJI No. 26 (rev.)), were prejudicial under the circumstances of this case. We are supported in our conclusion by the authorities cited above, as well as the weight of authority which supports strict rules for the admissibility of this kind of evidence to discredit a witness (see cases collected in 20 A.L.R.2d, p. 1421).

As we have concluded that the judgment must be reversed, we will briefly discuss appellants' remaining contentions on appeal relating to the propriety of the instruction given on the contributory negligence of the minor. After instructing the jury as to a child's standard of care, proximate cause, the contributory negligence of the father, and concurrent negligence, the court continued: "Contributory negligence is negligence on the part of a person who thereafter becomes a claimant for damages for alleged injury to his person or his property or negligence on the part of someone which, under the law, is imputed to that claimant and which negligence, concurring with the negligence of another, contributes in some degree in proximately causing the damage of which the claimant thereafter complains.

"One who is guilty of contributory negligence or one to whom such negligence is imputed under the law may not recover from another for the injury suffered.

"The mere fact that some act or omission of a plaintiff

contributed to his injury does not of itself bar recovery by him. A plaintiff is barred from recovery under the theory of contributory negligence only if some conduct of his own was negligent and was also a proximate cause of his injury.''

Appellants contend that this instruction was likewise erroneous as there was no evidence in the record of the contributory negligence of the minor. We cannot agree. We think the above quoted instruction as given was proper. Both Mr. and Mrs. Fortner testified that Scott had been expressly told not to ride on the motorcycle on the highway. Danny Wyatt testified that he told Scott to ask his mother for permission before leaving; that Scott left and returned, indicating that permission had been received. Mrs. Fortner testified that Scott had only asked for permission to open the gates for Danny. This was sufficient evidence to ask the jury to decide whether, considering the standard of care for children, such conduct on the part of a 9-year-old child was contributory negligence. We note that the jury was also instructed that if they found that Scott suffered a loss of memory so as to be unable to testify as to his conduct at the time of and immediately preceding the accident, he was entitled to a presumption of due care.

In view of the foregoing, the judgment must be and is hereby reversed.

Shoemaker, J., and Agee, J., concurred.