STATE, RESPONDENT, *v.* WYMAN, APPELLANT.

(No. 4,379.)

(Submitted December 10, 1919.   Decided December 17, 1919.)

[186 Pac. 1.]

*Criminal   Law—War—Sedition—Constitution — Information—
Intent—Pleading—Duplicity—Evidence—Other Like Acts—
Admissibility.*

Criminal Law—Sedition—Statute—Constitution.
   1.   The Sedition Act (Chap. 11, Laws Extra. Session, 1918), is not
   unconstitutional as attempting to deal with a subject exclusively
   within the jurisdiction of the Congress of the United States.
Same—Sedition—Statute—Intent.
   2.   The Sedition Act is valid, though intent is not made an in-
   gredient of the crime; if intent is essential to its validity, the word
   "calculated" used in that part of the Act which provides that one
   who "shall utter language *calculated* to incite or inflame resistance,"
   *etc.,* shall be guilty of sedition, *etc.,* is sufficiently broad to cover
   intent.
Same—Sedition—Information—Sufficiency.
   3.   *Held,* that an information alleging in substance that defendant
   uttered language to the effect that the soldiers of the United States
   would commit the same atrocities as those reported to have been
   committed by German soldiers, that the soldiers of the United States
   were no better than German soldiers, *etc.,* was sufficient to charge
   sedition.
Same—Sedition—What may Constitute.
   4.   Declarations calculated to bring the soldiers of the United States
   army into contempt, scorn, contumely and disrepute, and the use of
   contemptuous and slurring language concerning the form of govern-
   ment of the United States during war, are felonious under the Sedi-
   tion Act, regardless of the sex of the hearers.
Same—Sedition Act—Defines One Crime Only.
   5.   *Held,* that the Sedition Act defines but one crime, that of sedi-
   tion, provides only one punishment for the commission of the offense,
   however accomplished, and states but one offense; hence defend-
   ant's demurrer to the information on the ground of duplicity was
   properly overruled.
Same—Criminal Pleading—Duplicity.
   6.   In criminal pleading, where the statute mentions several acts
   disjunctively and prescribes that each shall constitute the same
   offense and be subject to the same punishment, the information may
   charge any or all of such acts conjunctively as constituting a single
   offense.
Same—Sedition—Conviction—Proper Instruction.
   7.   An instruction to the jury that, if they found beyond a reason-
   able doubt that defendant made either of the several statements
   charged in the information, they could convict, was correct.
Same—Sedition—Other Similar Acts—Evidence—Admissibility.
   8.   Evidence of other acts or declarations of the accused, of a like
   nature with those constituting the offense charged, is admissible not

only for the purpose of proving intent, guilty knowledge or motive, in corroboration of the testimony as to the offense charged, but also to prove the identity of the perpetrator of the crime, to negative the idea that the offense complained of was the result of mere accident or mistake or the employment of a mere loose word or phrase, or to show that the act was a part of a chain or system of like acts.

Same—Self-serving Declarations—Evidence—Inadmissibility.
9. Refusal to permit defendant to testify that at times other than those mentioned in the information he had made statements tending to show his loyalty to his country, was proper.

Same—Trial Practice—County Attorney—Improper Statements—Duty of Defendant—Record.
10. Failure to request an instruction to the jury as to objectionable statements made by the county attorney in his opening address bars defendant from complaining of them on appeal.

Same—Improper Cross-examination.
11. An offer of proof upon a matter not brought out on direct examination of a witness was properly excluded as not proper cross-examination.

*Appeals from District Court of Dawson County in the Seventh Judicial District; A. C. Spencer, a Judge of the Thirteenth District, presiding.*

R. L. WYMAN was convicted of the crime of sedition and appeals from the judgment and an order denying his motion for a new trial. Affirmed.

*Mr. Henri J. Haskell* and *Mr. Henry C. Smith,* for Appellant, submitted a brief; *Mr. Smith* argued the cause orally.

The state had no power to pass the law under which this prosecution is instituted. The subject matter of war is national, and every subject involved in the war, as such, is exclusively within the jurisdiction of the Congress. As was said in the case of *Pappens* v. *United States,* 252 Fed. 55, 57, 164 C. C. A. 167: "The control [of Congress] over the subject is plenary." Again, in the case of *Western Union Tel. Co.* v. *James,* 162 U. S. 650, 40 L. Ed. 1105, 16 Sup. Ct. Rep. 934, the court, speaking of the police power of a state, said: "However extensive the power may be, it cannot encroach upon the powers of the federal government in regard to rights granted or secured by the federal Constitution." (*State* v. *Peet,* 80 Vt. 449, 130 Am. St. Rep. 998, 14 L. R. A. (n. s.) 677, 68 Atl. 661; *Louisville & N. R. Co.* v. *Eubank,* 184 U. S. 27, 46 L. Ed. 416,

22 Sup. Ct. Rep. 277; *Covington & C. Bridge Co.* v. *Kentucky,* 154 U. S. 204, 38 L. Ed. 962, 14 Sup. Ct. Rep. 1087; *McCulloch* v. *Maryland,* 4 Wheat. (U. S.) 405, 4 L. Ed. 579, 601; *State* v. *Harper,* 48 Mont. 456, Ann. Cas. 1915D, 1017, 51 L. R. A. (n. s.) 157, 138 Pac. 495; *Henderson* v. *New York,* 92 U. S. 259, 23 L. Ed. 543 [see, also, Rose's U. S. Notes] ; *People* v. *Lynch,* 11 Johns. (N. Y.) 549; *Ex parte Quarrier,* 2 W. Va. 569; *Northwestern Mfg. Co.* v. *Wayne Cir. Judge (Chambers),* 58 Mich. 381, 25 N. W. 372; *Story* v. *Perkins,* 243 Fed. 997; *United States* v. *Casey,* 247 Fed. 362; *Tarble's Case,* 13 Wall. (U. S.) 397, 20 L. Ed. 597. See note on ''Nature and Scope of War Power'' appended to the case of *Masses Publishing Co.* v. *Patten,* Ann. Cas. 1918B, p. 1009; article on ''Sedition and the Courts,'' 22 Law Notes, p. 45; article on ''The War Power of Congress,'' vol. 22, No. 1, Law Notes, p. 24; Cooley's Constitutional Limitations, 7th ed., 615.)

We further call the court's attention to the proposition that any law which purports to authorize a conviction of anything spoken or printed without a criminal intent on the part of the defendant cannot be upheld. (*United States* v. *Pierce,* 245 Fed. 878, 883; *United States* v. *Schutte,* 252 Fed. 212; *United States* v. *Krafft,* 249 Fed. 919, 162 C. C. A. 117.)

The defendant is always permitted to show that ''his personal character in the trait involved in the charge has previously been good.'' (*People* v. *Ashe,* 44 Cal. 288; 16 Cyc. 1266.) The evidence of character must be such as to render it improbable that the defendant would be guilty of that particular crime. (12 Cyc. 412; *United States* v. *Chung Sing (Chung Sing* v. *United States),* 4 Ariz. 217, 36 Pac. 205.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Otto A. Gerth,* Assistant Attorney General, for the State, submitted a brief; *Mr. Frank Woody,* Assistant Attorney General, argued the cause orally.

Appellant makes the point that the state does not possess jurisdiction to legislate upon anything having to do with war.

By a course of argument, defendant's counsel reaches the conclusion that the matter of sedition is connected with the war-making power of Congress and is a matter upon which the state legislature cannot act. His brief cites a number of cases which hold that where Congress has dealt with a subject which is within its jurisdiction, the state is excluded. The cases cited are mostly those which arise under the commerce clause of our Constitution, under which said clause Congress, if it so chooses, is supreme. There is no doubt as to this proposition. There are, however, two qualifications upon this proposition which must always be kept in mind. One is that under the cases which appellant cites and in the case at bar the fact that Congress has control of the subject involved does not necessarily exclude state action, but leaves a concurrent jurisdiction. Secondly, state action upon such matters is objectionable only where it conflicts or interferes in its operation with congressional action.

The point above is foreclosed by the decision of this court in *State* v. *Kahn,* 56 Mont. 108, 182 Pac. 107. That decision is supported by other states which have had the question before them. (See, also, *State* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755; *State* v. *Holm,* 139 `Minn. 267, L. R. A. 1918C, 304, 166 N. W. 181.)

The appellant contends that the information under which he was prosecuted stated two separate and distinct offenses. This is not true, for the reason that one offense only can be stated under Chapter II, Laws Fifteenth Extraordinary Session, 1918. Only one crime is therein defined, *viz.,* the crime of sedition. One punishment is thereby imposed. The crime, however, may be committed by one or more or a series of acts. The information conforms to the rule of law upon this subject which is stated in 22 Cyc. 380. (See, also, *State* v. *Kanakaris,* 54 Mont. 180, 169 Pac. 42; *People* v. *Frank,* 28 Cal. 507, 513; *Woodford* v. *People,* 62 N. Y. 117, 20 Am. Rep. 464, 465; *Byrne* v. *State,* 12 Wis. 519; *State* v. *Murphy,* 47 Mo. 274; see, also, 58 Am. Dec. 243, note.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On the twenty-third day of April, 1918, the county attorney of Dawson county filed an information against appellant, in which it is alleged that on the fifteenth day of March, 1918, at the county of Dawson and state of Montana, the said R. L. Wyman committed the crime of sedition, as follows: ''That said R. L. Wyman did then and there, while the United States was engaged in war, willfully, unlawfully and feloniously state to divers persons and utter the following language calculated to bring the soldiers of the United States into contempt, scorn, contumely and disrepute: The said defendant did then and there willfully, unlawfully and feloniously say to divers persons and in the presence of divers persons, in speaking of the atrocities reported to have been committed by the German soldiers in the present war, that our soldiers would act in the same way and commit the same atrocities as have been reported of the German soldiers and that the soldiers of the United States army are no better than the German soldiers, and that his nephew, Owen, who was then a soldier in active service in the army of the United States, like a great many other soldiers from this country who are now in the service, would never have gone into the service if they had not been compelled to go; and that the said defendant did then and there while the United States was engaged in war, willfully, unlawfully and feloniously state to divers persons and in the presence of divers persons and utter the following disloyal, contemptuous and slurring language about the form of government of the United States: The said defendant did then and there willfully, unlawfully and feloniously state to divers persons and in the presence of divers persons that he would just as soon live under the Kaiser's government as under the government of the United States,'' *etc.*

Having entered his plea of not guilty, appellant was permitted, on the day of trial, to withdraw his plea and file a general and special demurrer to the information, which de-

murrer was by the court overruled, and appellant again entered his plea of not guilty and thereupon proceeded to trial on the information. He was convicted of the crime of sedition, as charged in the information, and judgment pronounced that he serve an indeterminate term of not less than six years nor more than twelve years, at hard labor in the state's prison. Thereupon he moved for a new trial, which motion was by the court denied, and appealed from the judgment of conviction and from the order of the court denying his motion for a new trial.

At the outset the attorney general moved this court to dismiss both the appeal from the judgment of conviction and the appeal from the order, on technical grounds, but inasmuch as counsel for appellant has, in part, supplied the deficiencies complained of, by the filing of an amended transcript on appeal, and in view of the gravity of the charge and the severity of the sentence imposed, the motion and the objections therein contained will be disregarded and the cause disposed of on its merits, to the end that, should it appear that the appellant was not lawfully convicted, he shall not unjustly suffer the severe penalty imposed upon him.

1. The first contention of appellant is that the Sedition Act [1] (Extra. Sess., 15th Legislative Assembly, 1918) attempted to deal with a subject exclusively within the jurisdiction of the Congress of the United States, and was, therefore, unconstitutional. The question was fully covered and finally disposed of by this court in the case of *State* v. *Kahn, ante,* p. 108, 182 Pac. 107.

2. The same is true of appellant's contention that the sedition [2, 3] law is defective in that it fails or omits the ''basic element of 'intent' altogether,'' the *Kahn Case* laying down the rule that the Sedition Act, being purely statutory, is valid though intent is not made an ingredient, and that, if the intent were needed, the word ''calculated'' is sufficiently broad to include intent. The court well said: ''It is elementary that, for the preservation of the peace, the safety of the people and the

good order of society, the legislature may prohibit certain acts, and attach a penalty for disobedience, without including any evil intent as an ingredient of the offense, other than the general intent implied from a violation of the statute.'' (*State* **v.** *Kahn, supra,* citing 12 Cyc. 148; 8 R. C. L. 62.)

3. The next contention of appellant presents a question more difficult of solution. Counsel adroitly argues that the language attributed to appellant, charges only that our soldiers might or would do certain things; that there is nothing in the information to show to what atrocities attributed to the German soldiers, appellant referred, and that the acts which it was reported the German soldiers had committed, might, conceivably, be committed by our soldiers without bringing them into contempt, contumely, scorn or disrepute; that the government was not concerned with what a man thought or as to what his opinion of future events might be. The consideration of this contention will be considerably simplified by a reading of the charging part of the information, from which it readily appears that the pleader did not deal with any doubtful expression; the word ''might'' does not appear in the alleged statement made by appellant, nor does any equivalent for that word, but the charge is a plain, direct statement that appellant did say that the American soldiers would commit the same atrocities as it was reported the German soldiers had committed.

We agree with counsel that the government was not, during the war, concerned with what a man thought so long as he kept his thoughts to himself, but the government was vitally concerned with every man's expressed opinions concerning our soldiers, the conduct of the war and the form of our government. It was the duty of every man, while our country was at war, to show his loyalty for his country, or, failing in that duty, to hold his peace, that his disaffection should not spread to others.

It is true, as suggested by counsel, that Wyman did not say that our soldiers had committed atrocities; but what he did say —his ''opinion,'' if you will—was that ''our soldiers would

commit the same atrocities as those reported to have been committed by the German soldiers.''

The information is, perhaps, weak in that the pleader did not set out the atrocities reported to have been committed by the German soldiers, that it might be determined from an inspection of the information what atrocious acts defendant prophesied our soldiers would commit; but it must be remembered in this connection that the phrase used in the information ''in speaking of the atrocities reported to have been committed by the German soldiers in the present war'' is merely parenthetical, and is no part of the alleged seditious utterance of appellant.

The law requires that the information contain ''a statement of the facts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.'' (Rev. Codes, sec. 9147.) It must be direct and certain as regards the offense charged and the particular circumstances of the offense charged, when they are necessary to constitute a complete offense. (Sec. 9148.) In submitting the information under consideration to the test laid down in the foregoing statutes, does it measure up to these requirements?

Omitting from the reading of the information the entire parenthetical phrase, have we still an information which states the crime charged in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended, and is it direct and certain as regards the offense charged? We would then have an information charging that the defendant did say that our soldiers would commit the same atrocities as those reported to have been committed by the German soldiers, and that the soldiers of the United States army are no better than the German soldiers. What does such a charge against the American soldiers mean?

Turning to the accepted definition of the word used, we find that ''atrocious'' is defined as ''outrageously or wantonly wicked, criminal, vile or cruel; extremely heinous; hence hor-

rible, shocking." "Atrocity"—"great cruelty or reckless wickedness; enormity of crime; heinousness." (Standard Dictionary.) Suppose, then, we substitute for the word used by appellant, its equivalent or equivalents: we have the charge that the defendant did say that our soldiers, when they reach the other side, will be outrageously or wantonly wicked, criminal, vile, cruel; their conduct extremely heinous, horrible, shocking; they will indulge in reckless wickedness, great cruelty, enormity of crime. Would it be said that such language was not "calculated" to bring the soldiers of the United States into contempt, scorn, contumely and disrepute? We think not.

The appellant was, apparently, a well-read man; clerk and recorder of his county; he was attempting to instruct his audience on the high standard attained by the German nation and posed as being posted on subjects connected with the war; and it cannot be doubted that he was, at the time, well informed as to the atrocities reported to have been committed by the German soldiers, whether he believed those reports to be true or false. The atrocities committed by German soldiers were, at the time the appellant made his declarations, of such general circulation, the topic of general conversation throughout the country, that they were known to every person of common intelligence, and we are irresistibly driven to the conclusion that appellant well knew of the reported atrocities of the German soldiers and had them in mind at the time of making his statement. Even though the conversation leading up to appellant's declarations, referred to only certain atrocities, his statement was so sweeping that it would include any and all atrocities committed or reported to have been committed.

Some suggestion is made that the declarations of appellant [4] were made in the presence of women alone, and therefore could not have had the effect charged. This position is untenable. The appellant was not charged with interference with the mobilization of the army, but with the utterance of language calculated to bring the soldiers of the United States army into contempt, scorn, contumely and disrepute, and the

use of contemptuous and slurring language concerning the form of government of. the United States. Women are at least as susceptible to the emotions enumerated as are men, and declarations calculated to instill such emotions in the minds of the people are felonious regardless of the sex of the hearers.

We find no imperfections in the information which tend to prejudice the substantial rights of appellant. The information is sufficient. (*State* v. *Stickney,* 29 Mont. 523, 75 Pac. 201; *State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 377; *State* v. *Pemberton,* 39 Mont. 530, 104 Pac. 556.)

4. It is next contended by counsel for appellant that the Act [5, 6] under consideration, the wording of which, in so far as it applies to the declarations of appellant, is followed in the information, defines two separate and distinct offenses, and that, in following the wording of the statute throughout, the information charges two distinct crimes, and for this reason appellant's demurrer should have been sustained. At first blush this complaint might seem to be well founded, and it might have been so had the legislature, in defining the different acts constituting sedition, defined different gradations of the ·offense and fixed a variety of penalties for the commission of the different acts. However, the statute before us defines but one crime, that of sedition, and provides but one punishment for the commission of the offense, however accomplished, and, under the general rule for the interpretation of penal statutes, the information, charging, as it does, in the language of the statute and in the conjunctive, states but one offense. (22 Cyc. 380; *People* v. *Frank,* 28 Cal. 513; *People* v. *Shelton,* 68 Cal. 434, 9 Pac. 458.)

The rule as laid down in Cyc. is as follows: "It is a well-settled rule of criminal pleading that when an offense against a criminal statute may be committed in one or more of several ways, the indictment (or information) may, in a single count, charge its commission in any or all of the ways specified in the statute. So where a penal statute mentions several acts disjunctively and prescribes that each shall constitute the same

offense and be subject to the same punishment, an indictment (or information) may charge any or all of such acts conjunctively as constituting a single offense. Or as the same rule is frequently stated, where a statute makes either of two or more distinct acts connected with the same general offense and subject to the same measure and kind of punishment, indictable separately and as distinct crimes when each shall have been committed by different persons and at different times, they may, when committed by the same person and at the same time, be coupled in one count as together constituting but one offense." (Wharton's Criminal Law, 5th ed., sec. 390; 14 R. C. L. 194; *People* v. *Leyshon*, 108 Cal. 440, 41 Pac. 480; *People* v. *Swaile*, 12 Cal. App. 192, 107 Pac. 134.)

In the case of *People* v. *Leyshon, supra,* cited with approval in *People* v. *Swaile,* the court said: "Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count for the reason that, notwithstanding each may by itself constitute the offense, all of them together do no more, and likewise constitute but one offense."

Here the words complained of were all a part of the same transaction, a part of the same conversation; the statements made by the same party and at the same time, and are charged in the information in the conjunctive, and all together state but one offense, to-wit, sedition, for which there is but one mode of punishment prescribed by the statute. The information was not, therefore, subject to demurrer on this ground. It conforms to the requirements of sections 9147, 9148 and 9149, Revised Codes, and was sufficient to advise appellant, as a man of common understanding, of the charge against him and to enable him to prepare to meet that charge.

5. The appellant complains of the court's instruction to the [7] jury, to the effect that, if they found beyond a reasonable doubt that appellant made either of the statements charged in the information, they could convict. As to this complaint, all

that is necessary to say is that, under the view taken of the information as given above, the instruction is a correct statement of the law. (*People* v. *Swaile, supra.*)

6. The appellant assigns as error the admission by the court [8] below of proof of other similar acts and declarations of the appellant, at other times and to other persons, insisting that such testimony is admissible only for the purpose of proving intent, and that here, there being no intent necessary to constitute the crime charged, such testimony could have been introduced for the purpose of, and could only have had the effect of, prejudicing the jurors against appellant.

The scope of the rule which permits the reception of evidence of other acts or declarations, of a like nature to that alleged as constituting the crime charged in the information, is much broader than that contended for by counsel. Evidence of other acts or declarations of the accused, of a like nature with those constituting the offense charged, is admissible for the purpose of showing the intent, guilty knowledge or motive, in corroboration of the testimony as to the offense charged, to prove the identity of the perpetrator of the crime, or to negative the idea that the particular offense complained of was the result of mere accident or mistake, or the employment of a mere loose word or phrase, or to show that the act complained of was a part of a chain or system of crimes. (*State* v. *McCarthy,* 36 Mont. 226, 92 Pac. 521; *State* v. *Mitton,* 37 Mont. 366, 127 Am. St. Rep. 732, 96 Pac. 926; *State* v. *Hill,* 46 Mont. 24, 126 Pac. 41; *State* v. *Vinn,* 50 Mont. 27, 144 Pac. 773; *State* v. *Gaimos,* 53 Mont. 118, 162 Pac. 596.)

It must be remembered also that, as hereinbefore stated, the word "calculated," as used in the Sedition Act, has much the same meaning as the word "intent," and that, in order to convict in a case of this nature, the jury must be convinced beyond a reasonable doubt that the expressions used by the accused were "calculated" to produce the evil effects alleged in the information. The testimony of such other declarations of the accused was properly admitted.

7. Appellant contends that the court erred in not permitting
**[9]** him to answer certain questions propounded to him by
his counsel, for the purpose of showing that at other times he
had made statements tending to show his loyalty to the country.
As this court stated in the case of *State* v. *Kahn, supra:* ''The
declarations, if made, were made out of court when the de-
fendant was not under oath nor subject to cross-examination.
They do not fall within any exception to the general rule which
excludes such evidence, and were properly rejected.'' (Citing
2 Wharton's Criminal Evidence, secs. 690–694.)

8. Appellant refers to certain statements made by the county
**[10]** attorney in his opening statement to the jury, not there-
after supported by evidence, as highly prejudicial. An exam-
ination of the statement discloses that the testimony might prop-
erly have been introduced to support the statements, and it
does not appear that appellant made any request of the court
for an instruction to the jury as to these statements of the
county attorney, and cannot now be heard to complain.

9. Finally it is urged that error was committed by the
**[11]** exclusion of an offer to prove a certain conversation
between defendant and witness Lunsford, to show *animus* on
the part of the witness. It is sufficient to say in this regard
that the witness was interrogated on a portion of the alleged
conversation and denied that she ever heard the defendant make
the statements here attempted to be proven; the inquiry was
not cross-examination on any subject brought out on direct
examination and was properly excluded as not proper cross-
examination. If the offer was an attempt to impeach the wit-
ness, it was not couched in terms which would bring it within
the rules prescribed for the propounding of an impeaching
question.

We find no prejudicial error of which appellant can complain
in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLO-
WAY, HURLY and COOPER concur.