STATE, RESPONDENT, *v.* SMITH, APPELLANT.

(No. 4,476.)

Submitted February 24, 1920. Decided March 8, 1920.)

[188 Pac. 644.]

*Criminal Law — Sedition — Intent—Evidence—Cross-examination—Hearsay—Information— Election—Instructions — Settlement—Appeal and Error.*

Criminal Law—Evidence—Cross-examination of Defendant—Waiver of Constitutional Privilege.
  1.   Where defendant in a criminal prosecution takes the stand as a witness in his own behalf, and testifies that he did not commit the crime imputed to him, he waives his constitutional privilege, and cannot refuse to testify to any facts which would be competent evidence in the case, if proved by other witnesses.
Same—Cross-examination of Defendant.
  2.   The general rule that cross-examination must be confined to matters about which the witness has been examined on his direct examination, or matters connected therewith directly or indirectly, *held* controlling where defendant offers himself as a witness, though a wide latitude in the examination is permissible.
Same—Party Cannot Make Out Case on Cross-examination.
  3.   Under pretense of cross-examination of a witness of his adversary, a party cannot make out his own case.

---

On the question of cross-examination of accused in criminal cases, under statutory limitations, see note in 15 L. R. A. 669.

Sedition—Cross-examination of Defendant—Impeachment—When Error.

4. Where, after defendant, charged with sedition, had testified in his own behalf simply denying that he made the utterances testified to by the state's witnesses, the county attorney cross-examined him, in the manner of laying the foundation for impeachment, as to other seditious language not charged in the information nor inquired into in the state's case in chief, he made him his own witness and was bound by his answers, and in thereafter permitting him to be impeached the court committed error.

Same—Intent.

5. *Held,* that while intent is not specifically made an element of the crime of sedition as defined by Chapter 11, Laws Ex. Sess. 1918, the legislature inferentially made it such by the use of the word "calculated" when it made language "calculated to incite or influence resistance" to constituted authority a public offense.

Same—Effect of Seditious Utterances—Jury Question.

6. The question whether the natural tendency and reasonably probable effect of alleged seditious utterances was to incite or inflame resistance to duly constituted federal or state authority in connection with the prosecution of the war, was a question for the jury, and failure to so charge was error.

Same—Rules in Libel Cases not Applicable.

7. Though based upon utterances, as are libel cases, the crime of sedition is not governed by the rules in such cases, in which the jury is the judge of both the law and the fact.

Same—Instructions—Settlement—Failure to Make Objections—Effect.

8. Where counsel for defendant on the settlement of the instructions made no objection to those proposed to be given, he adopted the theory of the court, and could not thereafter put it in error by showing that certain of the instructions were erroneous, or by charging improper refusal to give others on an opposite theory.

Same—Instructions—Proper Refusal.

9. On a trial for sedition, an instruction that in order to convict the jury must find that the utterances proved were seditious was properly refused.

Same—Hearsay Testimony.

10. The testimony of a witness, fixing a date by means of an entry made by his wife in a diary kept by her, was hearsay and incompetent.

Same—Information—Separate Offenses.

11. Alleged seditious utterances, if spoken at one time and place, may constitute a single offense, but where spoken at different times and places. and made to different persons each utterance, if it constitutes the crime of sedition, is a separate offense.

Same—Information—Election—Appeal and Error.

12. Where defendant charged with sedition made no motion to compel the state to make an election between a number of offenses charged in the information, and did not seek to have any of the charges withdrawn from consideration, he could. not on appeal raise the question whether proof of one offense as to which witnesses were introduced constituted an election.

*Appeal from District Court, Custer County; A. C. Spencer, Judge.*

W. K. SMITH was convicted of sedition, and appeals from the judgment and from an order denying a new trial. Reversed and remanded.

*Mr. Sharpless Walker* and *Mr. W. C. Packer,* for Appellant, submitted a brief; *Mr. Walker* argued the cause orally.

A witness cannot be cross-examined upon collateral matters merely for the purpose of contradicting him. The statute prescribes the methods whereby a witness may be impeached, and he cannot be discredited by testimony of the character offered by the state in this case; nor is it permissible to question the defendant for the purpose of degrading him before the jury. The accused cannot be cross-examined as to a matter that is neither a fact in issue nor relevant to a fact in issue. The defendant in a criminal case, when he offers himself as a witness in his own behalf, is placed in the same position as any other witness and the same rule obtains as to his cross-examination, which must be confined to the matters about which he had been examined in chief; and any infringement of that rule is a violation of the defendant's constitutional right that he shall not be compelled to testify against himself. (*State* v. *Inich,* 55 Mont. 1, 11, 13, 173 Pac. 230; *People* v. *Schmitz,* 7 Cal. App. 330, 15 L. R. A. (n. s.) 717, 94 Pac. 407; *People* v. *Leonardo,* 199 N. Y. 432, 92 N. E. 1060; *McKeone* v. *People,* 6 Colo. 346; *State* v. *Brown,* 3 Boyce (Del.), 499, 85 Atl. 797; *State* v. *Zimmerman,* 3 Kan. App. 172, 42 Pac. 828; *Hayden* v. *Commonwealth,* 140 Ky. 634, 131 S. W. 521; *Commonwealth* v. *Jackson,* 132 Mass. 16; *State* v. *Carson,* 66 Me. 116; *Ferguson* v. *State,* 72 Neb. 350, 100 N. W. 800; *Hager* v. *State,* 10 Okl. Cr. 9, 133 Pac. 263; *State* v. *La Mont,* 23 S. D. 174, 120 N. W. 1104; *State* v. *Shockley,* 29 Utah, 25, 110 Am. St. Rep. 639, 80 Pac. 865; Greenleaf on Evidence, sec. 449; Thompson on Trials, sec. 461; Underhill on Criminal Evidence, sec. 62; Wigmore on Evidence, secs. 983, 984.)

It is a well-established rule of evidence, universal in its application to the trial of criminal cases, that where the prosecuting

attorney cross-examines the defendant, or one of the witnesses for the defense, as to a distinct collateral and immaterial fact, not brought out on the examination in chief, the answer of the witness is conclusive against the questioner and cannot be subsequently contradicted by way of impeachment. The prosecuting attorney has for the time being, as to such new and collateral matter, made the accused or witness for the defense a witness for the state, and is bound by the testimony; and where incompetent and improper evidence has been admitted in rebuttal of such testimony, over objection and exception, to the substantial prejudice of the defendant, appellate courts have invariably held it to be reversible error. (*State* v. *Jones,* 51 Mont. 390, 153 Pac. 282; *Bullard* v. *United States,* 245 Fed. 837, 158 C. C. A. 177; *People* v. *McKellar,* 53 Cal. 65; *People* v. *DeGarmo,* 179 N. Y. 130, 71 N. E. 736; *People* v. *Ware,* 29 Hun (N. Y.), 473, 1 N. Y. Crim. Rep. 166; *People* v. *Newman,* 261 Ill. 11, 103 N. E. 589; *Barton* v. *State,* 154 Ind. 670, 57 N. E. 515; *State* v. *Zimmerman,* 3 Kan. App. 172, 42 Pac. 828; *Commonwealth* v. *Smith,* 162 Mass. 508, 39 N. E. 111; *State* v. *Kasper,* 140 Minn. 259, 167 N. W. 1035; *State* v. *Valle,* 196 Mo. 29, 93 S. W. 1115; *Nickolizack* v. *State,* 75 Neb. 27, 105 N. W. 895; *Bullock* v. *State,* 65 N. J. L. 557, 86 Am. St. Rep. 668, 47 Atl. 62; *Willis* v. *State,* 13 Okl. Cr. 700, 167 Pac. 333; *Hester* v. *Commonwealth,* 85 Pa. St. 139, 157; *Parker* v. *State,* 46 Tex. Cr. 461, 108 Am. St. Rep. 1021, 3 Ann. Cas. 893, 80 S. W. 1008; *State* v. *Coyle,* 41 Utah, 320, 126 Pac. 305; Wharton on Criminal Evidence, sec. 484.)

Evidence of other offenses is not admissible unless it comes within one of the well-defined exceptions to the general rule of exclusion, such as to show intent, motive, absence of accident or mistake, identity of the person on trial, or a common scheme, plan or system embracing the commission of two or more crimes so interwoven that proof of one tends to prove the other. Neither intent nor state of mind is a necessary element of the crime of sedition requiring independent proof. The essential thing is that statements of the character mentioned in the statute have

the result or be calculated to have the result therein specified. The state's testimony as to other offenses in its case in chief, or on cross-examination, or in rebuttal, was incompetent, and it was clearly prejudicial. (*State* v. *Hill,* 46 Mont. 24, 126 Pac. 41; *State* v. *Jones,* 51 Mont. 390, 153 Pac. 282; *Boyd* v. *United States,* 142 U. S. 450, 35 L. Ed. 1077, 12 Sup. Ct. Rep. 292 [see, also, Rose's U. S. Notes]; *People* v. *King,* 23 Cal. App. 259, 137 Pac. 1076; *People* v. *Molineux,* 168 N. Y. 264, 62 L. R. A. 193, 61 N. E. 286; *State* v. *Brown,* 3 Boyce (Del.), 499, 85 Atl. 797; *Bishop* v. *People,* 194 Ill. 365, 62 N. E. 785; *State* v. *Berger,* 121 Iowa, 581, 96 N. W. 1094; *State* v. *Fournier,* 108 Minn. 402, 122 N. W. 329; *People* v. *Lapidus,* 167 Mich. 53, 132 N. W. 470; *Smith* v. *State,* 17 Neb. 358, 22 N. W. 780, 5 Am. Cr. Rep. 363; *Smith* v. *State,* 5 Okl. Cr. 67, 113 Pac. 204; *State* v. *Rader,* 62 Or. 37, 124 Pac. 195; *State* v. *Fulwider,* 28 S. D. 622, 134 N. W. 807; *Swan* v. *Commonwealth,* 104 Pa. St. 218, 4 Am. Cr. Rep. 188; *State* v. *Kelley,* 65 Vt. 531, 36 Am. St. Rep. 884, 27 Atl. 203, 9 Am. Cr. Rep. 354; *State* v. *Smith,* 103 Wash. 267, 174 Pac. 9; Jones on Evidence, sec. 143; Wigmore on Evidence, secs. 300, 349; 8 R. C. L., secs. 200, 201.)

Hearsay evidence, not part of the *res gestae,* nor dying declarations, is inadmissible in a criminal case to prove any fact except such matters as name, age, pedigree, general reputation or statements of accused. It is incompetent and inadmissible as proof of any material fact which can be established by witnesses who can testify of their own knowledge; and the refusal of the court to exclude, on motion of defendant, the testimony of a state's witness as to the date of the alleged seditious utterances of the defendant, where the witness was relying entirely upon his wife's memorandum, not made in his presence, was prejudicial error. That hearsay testimony of this character is incompetent is a fundamental rule of evidence, and while citation of authorities is unnecessary, the following are referred to: *State* v. *Reed,* 53 Mont. 292–298, Ann. Cas. 1917E, 783, 163 Pac. 477; *People* v. *Frey,* 165 Cal. 140, 131 Pac. 127; *People* v. *Kinney,* 202 N. Y. 389, 95 N. E. 756; *State* v. *Beeson,* 155 Iowa, 355,

Ann. Cas. 1914D, 1275, 136 N. W. 317; *Bradshaw* v. *Commonwealth,* 73 Ky. (10 Bush) 576; *Brown* v. *People,* 17 Mich. 429, 97 Am. Dec. 195; *Commonwealth* v. *Ricker,* 131 Mass. 581; *State* v. *Goddard,* 162 Mo. 198, 62 S. W. 697; *Donner* v. *State,* 69 Neb. 56, 95 N. W. 40; *McRae* v. *State,* 8 Okl. Cr. 483, 129 Pac. 71; *State* v. *Shaw,* 75 Wash. 326, 135 Pac. 20; *Runge* v. *State,* 160 Wis. 8, 150 N. W. 977; 6 Ency. of Evidence, p. 443.

Conceding that the court had the right to advise the jury as to the law, the jury still has the power and the lawful right to decide according to their understanding, conscience and judgment, questions compounded of law and fact involved in all criminal cases, including a case where the charge is sedition, which is akin to or a species of libel. The issue whether the words attributed to the defendant were seditious was not submitted to the jury for its decision and verdict, as required by the Constitution and laws, and the verdict of conviction should be set aside. (*State* v. *Sloan,* 35 Mont. 367–371, 89 Pac. 829; *United States* v. *Hodges,* 2 Wheeler's Crim. Cas. 477–485, Fed. Cas. No. 15,374; *People* v. *Seeley,* 139 Cal. 118, 72 Pac. 834; *People* v. *Sherlock,* 56 App. Div. 422, 68 N. Y. Supp. 74, 15 N. Y. Cr. Rep. 297; *Robinson* v. *State,* 33 Ark. 180; *State* v. *Heacock,* 106 Iowa, 191, 76 N. W. 654; *State* v. *Verry,* 36 Kan. 416, 13 Pac. 838; *State* v. *Drummond,* 132 La. 749, 61 South. 778; *Commonwealth* v. *Worcester etc. Corp.,* 3 Pick. (Mass.) 327; *State* v. *Powell,* 66 Mo. App. 598; *Coleman* v. *State,* 6 Okl. Cr. 252, 118 Pac. 594; *Kane* v. *Commonwealth,* 89 Pa. St. 522, 33 Am. Rep. 787.)

The Sedition Act went into effect "from and after" its passage and approval on February 22, 1918. A criminal statute cannot operate retroactively. The prosecution did not attempt to prove the hour and minute on the twenty-second day of February when the law was approved; and in the absence of such precise proof, the whole of that day should be excluded in computing the point of time when the law went into effect. (*United States* v. *Jackson,* 143 Fed. 783, 75 C. C. A. 41; *People* v. Nye, 9 Cal. App. 148, 98 Pac. 241; *United States* v. *McPhee,*

51 Colo. 425, 118 Pac. 996; *Schilling* v. *State,* 116 Ind. 200, 18
N. E. 682; *Arnold* v. *Board of Supervisors,* 151 Iowa, 155, 130
N. W. 816; *Bemis* v. *Leonard,* 118 Mass. 502, 19 Am. Rep. 470;
*Murphy* v. *Commonwealth,* 172 Mass. 264, 70 Am. St. Rep. 266,
43 L. R. A. 154, 52 N. E. 505; *Budds* v. *Frey,* 104 Minn. 481,
15 Ann. Cas. 24, 117 N. W. 158; *State* v. *McCance* (Mo.), 19
S. W. 648; *State* v. *O'Brien,* 47 Ohio St. 464, 25 N. E. 121;
6 Am. & Eng. Ency. of Law, 2d ed., p. 939.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Otto A. Gerth,*
Assistant Attorney General, for the State, submitted a brief;
*Mr. Gerth* and *Mr. Frank Hunter,* County Attorney of Custer
County, argued the cause orally.

We cite the following authorities in support of our contention
that the cross-examination of the defendant in this case was
proper: *Cobban* v. *Hecklen,* 27 Mont. 245, 263, 70 Pac. 805, 811.
In this case this court had occasion to consider section 8021,
Revised Codes, and it is said in substance that this section
changed the common-law rule in respect to cross-examination.
It was further said that the right of cross-examination must be
freely exercised, and, regarding the limits to which cross-
examination may go, ought usually, if not always, to be resolved
against an objection. (See, also, *State* v. *Howard,* 30 Mont.
518, 527, 77 Pac. 54; 5 Jones on Evidence, secs. 835, 836; *State*
v. *Duncan,* 7 Wash. 336, 38 Am. St. Rep. 888, 35 Pac. 117.)

The evidence which was brought out on cross-examination of
the defendant in addition to proving the issues was also com-
petent for the purpose of impeaching the defendant as a wit-
ness. (Rev. Codes, sec. 8025; 5 Jones on Evidence, secs. 826,
827, 845, 848.)

The contention is made that the sedition law was approved
on February 22, 1918; that some of the testimony as to sedi-
tious remarks indicated that such remarks were made on that
day. It is argued that because the prosecution did not show the
exact moment that the law was approved, all of the twenty-
second day of February would be excluded, and consequently,
the law would be considered as taking effect on February 23.

The appellant upon this contention is not borne out by the authorities, but states a rule opposed to the universal current of authority. In 25 R. C. L., page 797, section 45, the rule is stated as follows: "In the absence of evidence showing at what hour of the day an Act was approved by the chief executive, it is presumed to have been approved on the first minute of that day." Upon the same point here involved we cite the case of *Lloyd* v. *North Carolina Ry. Co.*, 151 N. C. 536, 45 L. R. A. (n. s.) 378, 66 S. E. 604; *United States* v. *Norton*, 97 U. S. 164, 24 L. Ed. 907; *Lapeyre* v. *United States*, 17 Wall. (U. S.) 191, 21 L. Ed. 606; *Arnold* v. *United States*, 9 Cranch (U. S.), 104, 3 L. Ed. 671; *Louisville* v. *Portsmouth Sav. Bank*, 104 U. S. 469, 26 L. Ed. 775 [see, also, Rose's U. S. Notes].

Appellant contends that the information in the case attempted to charge five different crimes. He then argues that at the trial the prosecution having failed to elect which particular offense it was to rely upon for a conviction, the first evidence which tended to prove any offense under the information operated as an election. It is then asserted that the first evidence having failed to prove any offense whatever, the whole prosecution fails. It is not true in a case of sedition that the first evidence of a particular act is an election of such act upon which the state will rely for a conviction, where a number of acts have been charged against a defendant. The defendant himself must move the court to compel an election as to which particular offense the prosecution will stand on. In this case, however, we have another proposition which the appellant fails to take into consideration. In the case of *State* v. *Wyman*, 56 Mont. 600, 186 Pac. 1, it is said in substance that the Sedition Act defines but one crime, which may be committed in various ways or by a series of conduct or statements. It is further held by this court in the case cited that a series of transactions taken together will complete the offense of sedition, but that any one of the statements might be proved which will also complete the offense.

If the information, as appellant contends, contains but one offense occurring at one time and place, the state does not have

to elect which particular statement they are going to rely upon. If the defendant made a number of statements at one time and place as the information indicates, the state could prove any one of such statements or all of them together, and thereby establish but one offense. On the other hand, if the information contains a number of statements charged against the defendant, as it does, and at the trial if the state should be unsuccessful in proving one of such statements charged, it might undertake to prove any one of the others, or all of the others, and still be within its rights. The rule announced in the case of *State* v. *Gaimos*, 53 Mont. 118, 162 Pac. 596, does not apply.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appellant was convicted, in the district court of Custer county of the crime of sedition, sentenced to imprisonment for a term not less than ten nor more than twenty years, and to pay a fine of $20,000, and appeals from the judgment and from the order of the court denying his motion for a new trial.

The information charges six alleged seditious utterances, in the conjunctive and in a single count, and fixes the time as "on or about the eighth day of June, 1918." It will be recalled that the Sedition Act (Acts Ex. Sess. 1918, Chap. 11) became effective, by the signature of the governor, on February 22, 1918.

The first witness for the state, Ralph D. Rhea, testified to the making of the second seditious declaration by the defendant on the twenty-third day of February, 1918. On cross-examination he admitted that the only means he had of fixing the date was by an entry made by his wife in a diary kept by her, as to the date he returned from a certain trip, the statement having been made on the day he so returned; that he kept no track of dates. The wife was not called as a witness.

The second witness, one Robert Fauver, testified to the first alleged seditious utterance, and fixed the date thereof as February 18, 1918. He further testified as to the making of the

fourth seditious statement by the defendant, in the month of May, 1918, in the presence of himself, his wife, defendant's wife, and a young boy. No other witness was produced as to this occurrence, though it appears that Fauver's wife was present at the trial. The only other witness called on the state's case in chief testified as to a statement by defendant, in its nature seditious, but not included in the charge in the information. Whereupon the state rested its case.

No motion to compel an election by the state was made, though the evidence disclosed that the statements testified to were made at different times and places and to different persons.

The defense thereupon introduced six witnesses who testified that the reputation of the witness Fauver for truth, honesty and integrity was bad, and one witness who testified that he had, at another time, made statements contradictory of his testimony on the stand. Thereupon the defendant was placed on the stand, and denied categorically each of the statements made by the witnesses for the state, but went no further, and was then turned over to the county attorney for cross-examination. Over the objection of counsel for the defense, he was interrogated at length, in the manner of laying the foundation for impeachment, as to a large number of seditious utterances, both contained in and aside from the allegations of the information, but in no wise connected with the matter brought out in the state's case in chief or with his testimony on direct examination, and denied the making of any one of them. The wife of the witness Fauver was then placed on the stand, and over the objection of counsel permitted to relate the statement as testified to by Fauver and denied by appellant.

1. The first question raised by appellant's counsel is as to [1] the right of the county attorney to cross-examine appellant on matters not brought out on his direct examination, and refers to those questions propounded regarding other alleged seditious utterances, not contained in the charge in the information nor inquired into in the state's case.

The respondent contends that proof of such utterances was competent as a part of the state's case, for the purpose of showing intent or motive; as corroboration of the testimony concerning the crime charged; to show that the acts complained of were a part of a chain or system of crime, or to negative the idea that the particular offense charged was the result of mere accident or mistake or the use of mere loose words or phrases, under the authority of *State* v. *Wyman,* 56 Mont. 600, 186 Pac. 1, and that, if relevant as a part of the state's case, such matter was a proper subject of cross-examination, citing 5 Jones on Evidence, section 827, which reads as follows: "The test for determining whether a matter is relevant has often been laid down: Would the cross-examining party be entitled to prove it as a part of his case to establish his complaint or answer?"

Section 18, Article III, of our Constitution, provides that "no person shall be compelled to testify against himself, in a criminal proceeding." Section 9484 of the Revised Codes adds to this constitutional provision the following: "But he may be sworn and may testify in his own behalf." Under the Constitution and under the statute, the accused cannot be compelled to take the witness-stand, "but if he puts himself on the stand as a witness in his own behalf, and testifies that he did not commit the crime imputed to him, he thereby waives his constitutional privilege, and renders himself liable to be cross-examined upon all facts relevant and material to that issue, and cannot refuse to testify to any facts which would be competent evidence in the case, if proved by other witnesses." (*Commonwealth* v. *Nichols,* 114 Mass. 285, 19 Am. Rep. 346; *Commonwealth* v. *Lannan,* 13 Allen (Mass.), 563; *Commonwealth* v. *Mullen,* 97 Mass. 545; *State* v. *Wells,* 54 Kan. 161, 37 Pac. 1005; *State* v. *Wentworth,* 65 Me. 234, 20 Am. Rep. 688; *State* v. *Duncan,* 7 Wash. 336, 38 Am. St. Rep. 888, 35 Pac. 117; *State* v. *Rodgers,* 40 Mont. 248, 106 Pac. 3.)

The general rule is that cross-examination must be confined to [2] the matters about which the witness has been examined on his direct examination, or matter connected therewith, either

directly or indirectly. (*Shandy* v. *McDonald*, 38 Mont. 393, 100 Pac. 203.) /The general rule is perhaps modified to this extent: That "when an accused becomes a witness in his own behalf, and denies that he committed the crime for which he is on trial, a wide latitude of cross-examination is permissible, owing to the general nature of the defendant's statements. Upon the cross-examination of such witness such deflections from the matter brought out on direct examination are allowed as may be necessary to bring the whole matter involved in the direct examination before the court, and to extract the whole of the truth concerning the matter brought forward by the accused." (*State* v. *Rogers*, 31 Mont. 1, 77 Pac. 293; *State* v. *Rodgers,* *supra.*) And in the case of *State* v. *Howard*, 30 Mont. 518, 77 Pac. 50, this court said: "The right of cross-examination extends, not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy, and this right should not be restricted unduly."

/ However, though a wide latitude is allowed in the cross-examination of a defendant thus offering himself as a witness, the rules governing cross-examination must still control. Thus in the *Rogers Case*, 31 Mont. 1, 77 Pac. 293, the defendant was on trial for burglary; his brother was on the stand, and was asked as to whether he and the defendant had not gone on a certain trip for the purpose of committing robbery. The court said: "The questions, therefore, would convey the impression to the jury that the state's counsel had reason to believe that the defendant went to Cable for the purpose of committing a robbery. The fact that it was not intended to prejudice the defendant, or that the questions only accused the defendant of the intent to commit a crime, or that the negative answers of the witness were conclusive upon the state, could not free the questions of their objectionable character. It was certainly not to be expected that they would be answered in the affirmative."

The propounding of the questions was held to be reversible error.

But the respondent urges that if not proper for that purpose, the questions were proper for the purpose of impeachment. This is the same contention that was made in the case of *State* v. *Kanakaris*, 54 Mont. 180, 169 Pac. 42, and was disposed of by this court in the following language: "Upon the cross-examination of the defendant he was asked many questions by the county attorney, the purpose of which was to show that he had been guilty of numerous minor offenses, independent of the crime for which he was being tried. The attorney could have had no other object in view than to impeach the defendant or degrade him in the estimation of the jury, and for either purpose the questions are forbidden by statute." (Secs. 8024, 8031, Rev. Codes.) ".A witness, whether the accused or any other witness, may be discredited in any of the various ways named in the statute or sanctioned by law." (*State* v. *Rogers, supra.*)

The nearest approach, "under the statute, or sanctioned by law," to the method of attempted impeachment employed by counsel in this instance is found in section 8025 of the Revised Codes, providing that "a witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony." While under this section a different rule applies to the accused than to other witnesses (*State* v. *Burrell*, 27 Mont. 282, 70 Pac. 982), it is immaterial here, as counsel followed the statute. However, the provisions of the statute relate only to those statements *"inconsistent with his present tesimony,"* and it must be remembered that appellant had gone no further than to deny the particular utterances attributed to him by the few witnesses for the state; he did not declare his loyalty nor affirm that he had never made a seditious statement. Under these circumstances, had the questions been propounded to any other witness for the defense than the accused himself, they would have been improper.

Under the pretense of cross-examining a witness, one party to [3] an action cannot make out his case by witnesses for the

other side. (*Shandy* v. *McDonald, supra; Davis* v. *Morgan,* 19 Mont. 141, 47 Pac. 793; *Brophy* v. *Downey,* 26 Mont. 252, 67 Pac. 312; *Du Vivier* v. *Phillips,* 18 Mont. 370, 45 Pac. 554.)

Section 8021, Revised Codes, provides: "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions, *but* if he examine him as to other matters, such examination is to be subject to the same rules as a direct examination." In other words, by examining an adverse witness on matters other than facts stated in his direct examination or [4] connected therewith, the examiner makes the witness his own. Here the county attorney made the defendant his own witness to prove facts not touched upon in his case in chief, nor in the direct testimony of the witness. Having done so, he was bound by the answers of the witness, and the answer that the witness did not make the statement recited to him should have ended the matter. (*Bullard* v. *United States,* 245 Fed. 837, 158 C. C. A. 177; *State* v. *Zimmerman,* 3 Kan. App. 172, 42 Pac. 828; *People* v. *Schmitz,* 7 Cal. App. 330, 15 L. R. A. (n. s.) 717, 94 Pac. 407, 419; *People* v. *Rodriguez,* 134 Cal. 140, 66 Pac. 174; *George* v. *State,* 16 Neb. 318, 20 N. W. 311; *Bullock* v. *State,* 65 N. J. L. 557, 86 Am. St. Rep. 668, 47 Atl. 62; *State* v. *Coyle,* 41 Utah, 320, 126 Pac. 305.)

In *People* v. *Schmitz, supra,* the court said: "The cross-examination being erroneous, the error was not cured by the witness answering the question in the negative, for the reason that the prosecution subsequently used this examination of the defendant as a basis for introducing certain evidence of Ruef, which properly was a part of the case of the people in chief. (*People* v. *Morton,* 139 Cal. 727, 73 Pac. 609.) Negative answers were perhaps what the prosecution expected, so that under the guise of rebuttal they could call Ruef to the stand to contradict the defendant, and that is what was done. It is evident that by the rules of law, and that regard to fairness which characterizes every criminal trial, if the prosecution had evidence to prove that defendant took or accepted part of the money extorted by

the conspiracy and paid to his accomplice, Ruef, such evidence should have been produced as a part of the case for the prosecution. The defendant had the right to hear the evidence against him before being required to meet it. The evidence, and all the evidence, tending to show his guilt should have been produced. If Ruef paid or gave defendant money, part of the proceeds of the crime, the prosecution should have produced the evidence as a part of its case. The defendant would then have had the right to meet the evidence as part of his defense. In this case Ruef was not placed upon the witness-stand, nor was any evidence given as to any money being paid to defendant; but the evidence was held back until the defendant was asked the questions in cross-examination. Then, in the guise of rebuttal, the evidence of Ruef was brought forth, under the claim that it was to contradict the defendant, but really for the purpose of proving facts which were part of the case for the prosecution in the first instance. Such practice would be a great injustice to a defendant. It would be contrary to the way criminal trials are usually conducted in our courts. It would be contrary to every man's sense of right and justice. It is of much more importance that every defendant should have a fair and impartial trial under the rules of evidence laid down by the ablest judges and established by centuries of experience than that a defendant in some particular case should be convicted."

In *People* v. *Rodriguez, supra,* the court said: " 'If a question is put to a witness which is collateral and irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but is conclusive against him.' (*People* v. *McKeller,* 53 Cal. 65; 1 Greenleaf on Ev., sec. 449.) The testimony of the sheriff contradicting the appellant on the collateral and irrelevant matter was therefore clearly inadmissible; and it would be idle to say that it could not have been prejudicial to appellant. In the first place, it tended to 'discredit his testimony,' and, in the second place, it tended to prove the commission of another and independent crime, which, of course, was entirely unwarranted."

In *People* v. *De Garmo,* 179 N. Y. 130, 71 N. E. 736, the court said: "A more serious question is raised by the exceptions to the admission of certain evidence that is claimed to have been not only incompetent, but seriously and substantially prejudicial to the defendant. The defendant was a witness in his own behalf. Upon his direct examination he testified as to the occasion mentioned in the indictment, and nothing else. On his cross-examination he was interrogated as to a number of alleged occurrences which had no legal connection with the homicide, and his testimony thus elicited was then permitted to be contradicted by witnesses called in rebuttal for the prosecution. * * * At this point we encounter one of the limitations of the rule governing the impeachment of witnesses that was lost sight of in the case at bar. When the credibility of the defendant as a witness was assailed by compelling him upon his cross-examination to give testimony which, although competent for purposes of impeachment, was collateral to the main issue, the prosecution, at whose instance the collateral evidence was elicited, was bound thereby, and had no right to contradict it. This is an inflexible limitation of the rule referred to, and illustrations thereof are to be found in *Lawrence* v. *Barker,* 5 Wend. (N. Y.) 301; *Howard* v. *City Fire Ins. Co.,* 4 Denio (N. Y.), 502; *Stokes* v. *People,* 53 N. Y. 164, 13 Am. Rep. 492; *People* v. *Greenwall,* 108 N. Y. 296, 2 Am. St. Rep. 415, 15 N. E. 404; *People* v. *Ware,* 29 Hun (N. Y.), 473, affirmed 92 N. Y. 653.. * * * The admission of such evidence raises a conclusive presumption of injury to the defendant, and renders the reversal of the judgment herein an imperative necessity."

If counsel for the state desired to prove other acts of a similar character, in corroboration, he should have introduced that evidence in his case in chief. The evidence, and all the evidence tending to show the guilt of the defendant, should have been produced, so that, in all fairness, the defendant be given the opportunity to meet that evidence as a part of his defense. Having failed to do so, and having, for the time being, made the defendant his own witness, he was bound by the answer given,

and it was error for the trial court to thereafter permit him to be impeached upon such testimony. (*Willis* v. *State,* 13 Okl. Cr. 700, 167 Pac. 333; *Wilson* v. *State,* 37 Tex. Cr. 64, 38 S. W. 610; *State* v. *Dunn,* 53 Or. 304, 99 Pac. 278, 100 Pac. 258.) And the defendant could not thereafter be impeached by other witnesses who might testify that he made the statements attributed to him.

2. Another question is raised by appellant's contention that [5] proof of other utterances of a seditious nature was not admissible, as the element of intent was not included in the crime of sedition as defined in the statute, citing *State* v. *Kahn,* 56 Mont. 108, 182 Pac. 107, as so holding. While the question is not properly before us, as such testimony was not introduced as a part of the state's case, we deem it advisable, in the light of the fact that this case must be retried, to dispose of it here.

A careful reading of the *Kahn Case* will disclose that the court did not go as far as counsel contends it did. While it is true that, as stated by counsel, the court there said: "It is elementary that for the preservation of the peace, the safety of the people, and the good order of society, the legislature may prohibit certain acts, and attach a penalty for disobedience, without including any evil intent as an ingredient of the offense other than the general intent implied from a violation of the statute"—it in the same paragraph continued: "But the provision of the statute is, 'shall utter language calculated to incite or inflame resistance,' *etc.* Primarily the word 'calculate' means to compute mathematically, and it implies power to think, to reason, to plan. In its broader significance *it means to intend,* to purpose, to design. (Century Dictionary; Standard Dictionary.)"

3. Under subdivisions 2 and 3 of section 1 of the Sedition Act, [6] that the utterance complained of was "calculated" to produce the effect set out in the statute is a necessary ingredient of the crime, and the question as to "whether the natural tendency and reasonably probable effect of the language was to incite or inflame resistance to duly constituted federal or state authority in connection with the prosecution of the war" was a question

for the jury, and the jury should have been so advised by the instructions. (*State* v. *Kahn, supra.*)

However, counsel for the defense is in error in contending that, **[7]** because based upon utterances, the crime of sedition is to be governed by the rules in libel cases, where, under the Constitution, the jury is the judge of both the law and the fact. In the *Kahn Case* above, this court has indicated that such contention is without merit. It there said: "Sedition was a crime unknown to the common law; the nearest approach to it was libel of the Constitution or government, but that offense has never been recognized by the states of this Union. Sedition is a purely statutory offense, and our Act is declared to be, and is in fact, a general police regulation."

Our Sedition Act (Chap. 11, Laws Ex. Sess. 1918) defines a public offense as any other public offense is defined in our Penal Code, and a prosecution thereunder is identical with any other prosecution under a penal statute; and the rule herein announced, following that in the *Kahn Case,* goes no further than the rule applied generally in criminal cases, whenever applicable. Thus in a grand larceny case, the jury must be instructed that they must find beyond a reasonable doubt, not only that the accused committed the act, but also that he did so "with the intent to deprive or defraud the true owner of his property," *etc.* **[8]** However, appellant's counsel, on the settlement of the instructions, made no objection to those proposed to be given, and thus adopted the theory of the court, and cannot thereafter put the court in error, either by a showing that certain of the instructions were erroneous, or by the refusal to give other offered instructions on an opposite theory. (Sec. 9271, subd. 4, Rev. Codes; *State* v. *Brodock,* 53 Mont. 463, 164 Pac. 658.)

4. The offered instructions by the defense, attempting to advise **[9]** the jury that they must, in order to convict, find that the utterances were seditious, were clearly erroneous and properly refused. As to that portion of defendant's offered instructions Nos. 1 and 5, advising the jurors that they could not find the defendant guilty unless they found beyond a reasonable doubt

that the defendant, since the twenty-second day of February, 1918, made the utterances, the offered instructions were properly refused, as covered by the court's instruction No. 2, advising the jurors that the crime was complete if they found beyond a reasonable doubt that "at any time subsequent to February 22, 1918," *etc.*

5. The testimony of the witness Rhea, fixing the date of the [10] alleged offense by means of what he saw in his wife's diary, was, as to the date, hearsay, and should have been stricken on motion. It was competent for the witness to testify as to the time, with reference to his return from the trip mentioned, but if, as he stated, he had no independent knowledge of the date of his return, the date should have been fixed by the testimony of the wife or some other witness than Rhea.

6. Appellant contends that, as the proof disclosed that the charge in the information contained more than one alleged offense, the proof of the first offense as to which witnesses were introduced was, in effect, an election on the part of the state; while the respondent urges that, under the decision in *State* v. *Wyman,* 56 Mont. 600, 186 Pac. 1, there was but one offense charged, and consequently no call for an election.

It is true that, in the *Wyman Case,* it was held that the information may contain numerous allegations which, if taken [11] singly, would constitute as many offenses under the Sedition Act, but that, when alleged collectively, they may do no more than charge one offense—the offense of sedition; but as to whether the utterances alleged constitute one offense or many depends upon the circumstances of the particular case. All of the alleged utterances, if spoken at one and the same time and place, might constitute a single offense, but where spoken at different times and places and to different persons, each utterance, if it constituted the crime of sedition, would be a separate [12] offense. However, no motion to compel an election was interposed, and appellant did not seek to have any of the charges in the information withdrawn from consideration of the jury,

and is therefore in no position here to raise the question. (*State v. Reed*, 53 Mont. 292, 298, 163 Pac. 477.)

The language employed by Mr. Justice McFarland, in the case of *People* v. *Wells*, 100 Cal. 459, 34 Pac. 1078, in the light of the intense feeling existing during the war, when righteous indignation over dastardly attacks on our government, our soldiers, and our flag was apt to override the better judgment and knowledge of proper procedure, is particularly applicable to cases such as this: "It is too much the habit of prosecuting officers to assume beforehand that the defendant is guilty, and then expect to have the established rules of evidence twisted, and all the features of a fair trial distorted, in order to secure a conviction. If a defendant cannot be fairly convicted, he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent."

For the reasons stated, the judgment and order of the district court of Custer county are reversed, and the cause is remanded to said county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.